FILED
CLERK, U.S. DISTRICT COURT

09/15/2025

CENTRAL DISTRICT OF CALIFORNIA
BY: ____KD____ DEPUTY

Ariel A. Neuman - State Bar No. 241594
    aneuman@birdmarella.com
William E. Johnston - State Bar No. 287707
    wjohnston@birdmarella.com
Michael C. Landman - State Bar No. 343327
    mlandman@birdmarella.com
Devon E. Porter - State Bar No. 308365
    dporter@birdmarella.com
BIRD, MARELLA, RHOW,
LINCENBERG, DROOKS & NESSIM, LLP
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Defendant Grigor
Termendjian

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

    vs.

GRIGOR TERMENDJIAN,

    Defendant.

CASE NO. 2:23-CR-00453-JLS

**DEFENDANT GRIGOR TERMENDJIAN'S OPPOSITION TO GOVERNMENT'S MOTION REGARDING TRIAL MATTERS**

Assigned to Hon. Josephine L. Staton

# **TABLE OF CONTENTS**

I.     **INTRODUCTION** ................................................................. 1

II.    **BACKGROUND** ................................................................. 2

III.   **ARGUMENT** ..................................................................... 4

     A.    **Anonymous Juries Are Rarely Empaneled, And Only Where There is a Strong Reason to Believe Jurors Need Protection.** .......... 4

     B.    **The Decision to Empanel an Anonymous Jury Should Not Be Based Exclusively on *In Camera* Material.** ................................. 5

     C.    **The Government's Inaction Speaks Louder Than Its Words in This Motion.** .................................................................... 8

     D.    **Even if this Court Decides to Reach the *Shryock* Factors, They Weigh Decidedly Against Empaneling An Anonymous Jury** ................................................................................. 10

          1.    Involvement with Organized Crime ........................................... 11

          2.    Participation in a Group with Capacity to Harm Jurors ............. 13

          3.    Past Attempts to Interfere with the Judicial Process ................. 13

          4.    Potential for Lengthy Incarceration ........................................... 14

          5.    Publicity ..................................................................................... 15

     E.    **Alternatively, the Court Should Order a Partially Anonymized Jury.** ................................................................... 16

IV.   **CONCLUSION** ................................................................ 16

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Martin v. Bissonette*,
 118 F.3d 871 (1st Cir. 1997) ...............................................................9

*U.S. ex rel. Orlando v. Fay*,
 350 F.2d 967 (2d Cir. 1965) ................................................................9

*People v. Khrayan*,
 No. B213582, 2012 WL 1077654 (Cal. Ct. App. Apr. 2, 2012)........................ 12

*United States v. Ashburn*,
 No. 13-CR-0303 NGG, 2014 WL 5800280 (E.D.N.Y. Nov. 7, 2014) ........... 6, 7

*United States v. Boyajian*,
 No. 16-50327, 2023 WL 3915966 (9th Cir. June 9, 2023) ................................ 15

*United States v. Boyajian*,
 No. CR09-933(A)-CAS, 2016 WL 225724 (C.D. Cal. Jan. 19, 2016) ........... 5, 6

*United States v. Fernandez*,
 388 F.3d 1199 (9th Cir. 2004), *modified*, 425 F.3d 1248 (9th Cir.
 2005)........................................................................................5, 6, 15

*United States v. Herron*,
 2 F. Supp. 3d 391 (E.D.N.Y. 2014), *aff'd*, 762 F. App'x 25 (2d Cir.
 2019)........................................................................................... 10

*United States v. Martin*,
 No. CR 07-1205 (A) CBM, 2009 WL 453111, at *2 (C.D. Cal. Feb.
 20, 2009) ...................................................................................... 11

*United States v. McElhiney*,
 No. CR 02-938-GHK, 2007 WL 9676540 (C.D. Cal. Mar. 6, 2007)............ 5, 15

*United States v. Melendez*,
 743 F. Supp. 134 (E.D.N.Y. 1990)................................................... 8

*United States v. Mikhel*,
 889 F.3d 1003 (9th Cir. 2018) ......................................................... 5

*United States v. Millan-Colon*,
  834 F. Supp. 78 (S.D.N.Y. 1993) .................................................................. 7, 11

*United States v. Morales*,
  655 F.3d 608 (7th Cir. 2011) ............................................................................ 4

*United States v. Mostafa*,
  7 F. Supp. 3d 334 (S.D.N.Y. 2014) .................................................................. 6

*United States v. Napue*,
  834 F.2d 1311 (7th Cir. 1987) .......................................................................... 7

*United States v. Prado*,
  No. 10-CR-74 JFB, 2011 WL 3472509 (E.D.N.Y. Aug. 5, 2011) ...................... 9

*United States v. Ross*,
  33 F.3d 1507 (11th Cir. 1994) .......................................................................... 4

*United States v. Sanchez*,
  74 F.3d 562 (5th Cir. 1996) .............................................................................. 4

*United States v. Shryock*,
  342 F.3d 948 (9th Cir. 2003) ................................................................. *passim*

*United States v. Thompson*,
  827 F.2d 1254 (9th Cir. 1987) .......................................................................... 6

*United States v. Vario*,
  943 F.2d 236 (2d Cir. 1991) ........................................................................... 11

*United States v. Yandell et al.*,
  2:19-cr-107 (E.D. Cal.) ..................................................................................... 5

**Other Authorities**

Fifth Amendment, U.S. Constitution ..................................................................... 4

Sixth Amendment, U.S. Constitution ............................................................... 4, 16

DEFENDANT GRIGOR TERMENDJIAN'S OPPOSITION TO GOVERNMENT'S MOTION REGARDING TRIAL MATTERS

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

The government's Motion for an anonymous jury is an unusual and unjustified request in a non-violent tax and money laundering case. <u>Dkt. 98</u>. Empaneling an anonymous jury is an extreme measure of last resort, necessary only when there is strong evidence that juror safety is threatened. The cases where anonymous juries are empaneled typically involve charges of terrorism, capital murder, RICO, other violent acts, or at least obstruction of justice. The Indictment against Grigor Termendjian, a successful Los Angeles businessman, speaks only of financial transactions, investments, and tax filings.

To overcome the deficiencies in its Motion, the government is once again relying on an *in camera* submission, leaving Mr. Termendjian shadow boxing against arguments and "evidence" he cannot see. ████████████████████ ████████████████████████████████████ ███████████████████████████████████████ ████████ The Court should decline to decide such a consequential Motion based on any *in camera* submissions.

What is known is revealing. Mr. Termendjian has not been charged with violence, witness tampering, or obstruction—allegations that are present in most cases involving anonymous juries. If the government had evidence of his involvement in such activity, it could have charged him with such crimes. ████ ████████████████████████████████████ ███████████████████████████████████ ████████████████████████████████████████ ██████████████████████████ And if there were evidence of witness tampering (attempted or otherwise) that could withstand the adversarial process, the government could have moved to revoke his pretrial release. But, of course, it has not.

1 ██████████████████████████████████████

2 ████████████████████████████████████████

3 ████████████████████████████████████████

4 ██████████████████████████████████████

5 ████████████████████████████████████████████

6 ███████████████████████████████████ Moreover, the government never made a motion to exclude Mr. Termendjian from the trial or otherwise restrict his activities in the lead-up to that trial, and he attended without incident for the entire six-week duration. In short, the government's inaction over the last six years speak louder than its words in this Motion. Mr. Termendjian's actions during that time period only demonstrate that the Motion is unwarranted.

As set forth in this Opposition, the factors this Court can weigh in deciding the government's Motion do not support the extraordinary relief the government is requesting.

## II.    BACKGROUND

Mr. Termendjian was indicted in the District of Utah in March 2023 with one count of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371; one count of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h), and four counts of engaging in transactions in proceeds of specified unlawful activity, in violation of 18 U.S.C. § 1957. Dkt. 1-2. The Indictment alleges that Mr. Termendjian assisted Lev Dermen (his brother), Jacob Kingston, and Sezgin Baran Korkmaz in their efforts to launder tens of millions of dollars of proceeds from a tax refund fraud scheme. *Id.* There is no mention in the Indictment of any organized crime groups being involved.

The government allowed Mr. Termendjian to self-surrender, did not seek pretrial detention at his arraignment and detention hearing, and did not request house arrest or any other sort of informal confinement. *United States v. Termendjian*, 2:23-cr-119 (D. Utah), Dkt. 10. As is standard, Mr. Termendjian's

1  conditions of release required him to "avoid all contact, directly or indirectly, with

2  any person who is or may be a[] . . . potential witness." *Id.*, Dkt. 7.

3      In September 2023, Judge Dale Kimball of the District of Utah ordered the

4  case transferred to this District. Dkt. 1. Since his release, Mr. Termendjian's conduct

5  on pretrial release has been exemplary. He has complied with his release conditions

6  for over two years, and his pretrial officer supported, and the government did not

7  oppose, his request to remove his GPS ankle monitor and replace it with remote

8  location monitoring through his phone. Dkt. 13.

9      In June 2024, Mr. Termendjian filed a Motion to lift the Attorney-Eyes-Only

10  (AEO) Protective Order that had been imposed by the court in the District of Utah.

11  Dkt. 33. That AEO order permits the government to withhold key witness

12  statements until a few weeks before trial, and Mr. Termendjian sought to lift the

13  order so that his counsel could effectively prepare for trial. *Id.* ██████████

14  ████████████████████████████████████████

15  ████████████████████████████████████████

16  ██████████████ Dkt. 38. At the time, Mr. Termendjian filed an objection to

17  the government's *in camera* submission and insisted that he—or, at the very least,

18  his counsel—be able to contest the evidence proffered by the government. Dkt. 32.

19  To date Mr. Termendjian's counsel has never seen that submission.[1]

20      That same *in camera* submission, with whatever documents the government

21  included that have not been disclosed to defense counsel, is now the only factual

22  support relied on by the government in its Motion for an anonymous jury. Dkt. 98 at

23  9. Of course it is impossible for the defense to respond to evidence it has not seen

24  and about which it has only vague descriptions.

25

26  _____

27  [1]    While the Court ultimately denied Mr. Termendjian's Motion to lift the AEO order, Mr. Termendjian is not aware of a ruling on his objection to the consideration

28  of the *in camera* evidence.

1    Beyond the *in camera* submission, the government's Motion merely recycles

2    arguments and case law that it used when requesting a *partially* anonymized jury in

3    the trial of Lev Dermen. *See United States v. Dermen*, 2:18-cr-365-JNP, Dkt. 513.

4    Notably, in Dermen's trial, the government never requested a fully anonymized jury,

5    but only a partially anonymized one, where jurors' names were not mentioned in

6    court or disclosed to the defendant, but still given to defense counsel. *Id.*

7  **III.    ARGUMENT**

8        **A.    Anonymous Juries Are Rarely Empaneled, And Only Where There**

9            **is a Strong Reason to Believe Jurors Need Protection.**

10   The Ninth Circuit "recognize[s] that empaneling an anonymous jury is an

11   unusual measure that is warranted only where there is a *strong reason* to believe the

12   jury needs protection or to safeguard the integrity of the justice system, so that the

13   jury can perform its factfinding function. *United States v. Shryock*, 342 F.3d 948,

14   971 (9th Cir. 2003) (emphasis added); *see also United States v. Morales*, 655 F.3d

15   608, 622 (7th Cir. 2011) ("[J]ury anonymity is warranted only where strong reasons

16   lead the court to believe that the jury needs protection.").

17   A strong evidentiary showing is necessary because an anonymous jury

18   threatens a defendant's constitutional rights: "[A]nonymous juries may infer that the

19   dangerousness of those on trial required their anonymity, thereby implicating

20   defendants' Fifth Amendment right to a presumption of innocence." *Shryock*, 342

21   F.3d at 971; *see also United States v. Ross*, 33 F.3d 1507, 1519 (11th Cir. 1994)

22   ("An anonymous jury raises the specter that the defendant is a dangerous person

23   from whom the jurors must be protected, thereby implicating the defendant's

24   constitutional right to a presumption of innocence."). Furthermore, "the use of an

25   anonymous jury may interfere with defendants' ability to conduct voir dire and to

26   exercise meaningful peremptory challenges, thereby implicating defendants' Sixth

27   Amendment right to an impartial jury." *Shryock*, 342 F.3d at 971; *see also United*

28   *States v. Sanchez*, 74 F.3d 562, 565 (5th Cir. 1996) ("The defendant has a right to a

1  jury of known individuals not just because information such as was redacted here

2  yields valuable clues for purposes of jury selection, but also because the verdict is

3  both personalized and personified when rendered by 12 known fellow citizens.").

4      Given the stakes, anonymous juries in this district are typically empaneled

5  only in violent organized crime cases or those involving witness tampering. *See,*

6  *e.g., United States v. McElhiney*, No. CR 02-938-GHK, 2007 WL 9676540, at *2

7  (C.D. Cal. Mar. 6, 2007) (anonymous jury empaneled in capital murder case where

8  defendant, a member of the Aryan Brotherhood, had prior conviction for conspiracy

9  to kill a witness); *United States v. Fernandez*, 388 F.3d 1199, 1245 (9th Cir. 2004),

10  *modified*, 425 F.3d 1248 (9th Cir. 2005) (anonymous jury approved in multi-

11  defendant RICO case involving the Mexican Mafia and murder charges); *United*

12  *States v. Mikhel*, 889 F.3d 1003, 1031 (9th Cir. 2018) (anonymous jury approved in

13  kidnapping and capital murder case involving five victims); *United States v.*

14  *Boyajian*, No. CR09-933(A)-CAS, 2016 WL 225724, at *5-*6 (C.D. Cal. Jan. 19,

15  2016) (anonymous jury appropriate where, in prior trial for unlawful sex with

16  minors, evidence was introduced that defendant had made direct violent threats to

17  minors to dissuade them from testifying against him). Even among cases involving

18  allegations of extreme violence and organized crime activity, as well as obstruction

19  of justice, requests for anonymous juries are the exception rather than the rule, and

20  in most such cases the issue is never raised by the government. *See, e.g.*, *United*

21  *States v. Mills et al.*, 2:02-cr-00938 (C.D. Cal.) (no anonymous jury requested in

22  violent RICO conspiracy case); *United States v. Yandell et al.*, 2:19-cr-107 (E.D.

23  Cal.) (no anonymous jury requested in Aryan Brotherhood RICO case involving

24  allegations of murder and drug trafficking).

25      **B.    The Decision to Empanel an Anonymous Jury Should Not Be**

26      **Based Exclusively on *In Camera* Material.**

27      The government's decision to rely exclusively on a prior *in camera*

28  submission to justify its request for an anonymous jury is deeply troubling and

should be rejected. As Mr. Termendjian outlined in his original objection to this submission, Dkt. 32, "[a]bsent such compelling justification, ex parte proceedings are anathema in our system of justice and, in the context of a criminal trial, may amount to a denial of due process." *United States v. Thompson*, 827 F.2d 1254, 1258-59 (9th Cir. 1987); *see also United States v. Ashburn*, No. 13-CR-0303 NGG, 2014 WL 5800280, at *10 (E.D.N.Y. Nov. 7, 2014) ("Ex parte communication between the Government and the court . . . is disfavored, as it deprives the defendant of notice of the precise content of the communication and an opportunity to respond.").

Adversarial scrutiny is so essential to the decision to grant an anonymous jury because of "the potential impact on a defendant's constitutional rights" and the requirement that the Court "find a real threat to the judicial process before granting an anonymous jury." *United States v. Mostafa*, 7 F. Supp. 3d 334, 337 (S.D.N.Y. 2014) (emphasis added). In none of the Ninth Circuit cases cited by the government in support of their Motion does it appear that the government relied on *in camera* submissions to obtain an anonymous jury. *See United States v. Boyajian*, No. CR09-933(A)-CAS, 2016 WL 225724, at *5-*6 (C.D. Cal. Jan. 19, 2016); *United States v. Shryock*, 342 F.3d 948, 970-972 (9th Cir. 2003); *United States v. Fernandez*, 388 F.3d 1199, 1244 (9th Cir. 2004).

*In camera* submissions by the government, to the extent they rely on confidential informants ("CIs") and cooperating witnesses ("CWs"), often contain rank speculation and multiple levels of hearsay. [W]hile "the district judge might be able to detect some of these deficiencies by [her]self, . . . that is not [her] normal role under our system of justice." *Thompson*, 827 F.2d at 1260. To do this, the judge "would have to take on the role of defense counsel . . . . And, with all appropriate respect for our able district judges, there might be arguments they would overlook if unassisted by an advocate." *Id.* at 1260–61. "Even where the government acts in good faith and diligently attempts to present information fairly during an *ex parte*

proceeding, the government's information is likely to be less reliable and the court's ultimate findings less accurate than if the defendant had been permitted to participate." *United States v. Napue,* 834 F.2d 1311, 1319 (7th Cir. 1987).

To guard against these blinders, many courts reject *in camera* submissions altogether or require heightened levels of proof, such as sworn affidavits by individuals with firsthand knowledge. For example, in *United States v. Millan-Colon*, 834 F. Supp. 78, 84 (S.D.N.Y. 1993), a Mafia case, the court discounted a letter by the AUSA claiming that a CI had spoken to the defendant's relative, who claimed the defendant had convinced three jurors to vote for him in an earlier trial that had ended in mistrial. Because these allegations were "unsworn and unverified triple hearsay" and "hotly contested by defense counsel," the court declined to "credit this evidence at this time" and found that it "ha[d] no persuasive effect." *Id.* at 84 n.4; *see also id.* at 84 (also rejecting reliance on newspaper article in which defendant is described as a "reputed Bonanno mobster").

Similarly, Judge Nicholas Garaufis, in a violent gang case, "decline[d] to rely on the substance of the sealed, ex parte submission as support for empaneling an anonymous jury" because it "consist[ed] of only a letter unaccompanied by a sworn affirmation." *United States v. Ashburn*, No. 130CR00303 (NGG), 2014 WL 5800280 (E.D.N.Y. Nov. 7, 2014). These cases demonstrate that when free from adversarial scrutiny, the government may be tempted to rely on shoddy evidence.

That is the concern here. ███████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████

---

[2]    Due to the AEO Order, defense counsel is not permitted to share a fully unredacted version of this Opposition with Mr. Termendjian.



13      In light of these concerns, this Court should not consider any *in camera*

14  submission unless it is first shared with counsel for Mr. Termendjian and they are

15  given an opportunity to respond. *See United States v. Melendez*, <u>743 F. Supp. 134,</u>

16  <u>138</u> (E.D.N.Y. 1990) ("[T]he Government submitted an *ex parte* affirmation, which

17  the Court refused to consider on this application, unless counsel for all parties were

18  furnished with copies."). If the Court overrules Mr. Termendjian's objection, the

19  Court should discount any information that is not specific or that is unsupported by

20  sworn affirmations from someone with firsthand knowledge.

21      **C.    The Government's Inaction Speaks Louder Than Its Words in This**

22          **Motion.**

8



DEFENDANT GRIGOR TERMENDJIAN'S OPPOSITION TO GOVERNMENT'S MOTION REGARDING TRIAL MATTERS



1

2

3

4          The fact that the government has done nothing other than voice its concerns

5   under the veil of *in camera* submissions speaks volumes. *See United States v.*

6   *Herron*, <u>2 F. Supp. 3d 391, 398</u> (E.D.N.Y. 2014), *aff'd*, <u>762 F. App'x 25</u> (2d <u>Cir.</u>

7   <u>2019</u>) (declining to credit "the Government's allegation of current witness

8   tampering based on unidentified 'credible information' [which] is not charged in the

9   indictment (and therefore is untested by a grand jury) and is unsupported by other

10  evidence or indicia of reliability").

11

12

13

14

15

16

17

18                                                                This alone should be

19  sufficient to deny the government's Motion.[3]

20          **D.    Even if this Court Decides to Reach the *Shryock* Factors, They**

21                 **Weigh Decidedly Against Empaneling An Anonymous Jury**

22

23

24                                                                But if the Court proceeds to

25

26  _____

27  [3]   Of course, if counsel could see the evidence it would respond with more
    specificity. As indicated at the outset, the government's approach has left the
28  defense with the ability to do nothing more than shadow box.

analyze the government's request under the prevailing Ninth Circuit test, those factors also weigh against granting the government's Motion.

The factors include: "(1) the defendants' involvement with organized crime; (2) the defendants' participation in a group with the capacity to harm jurors; (3) the defendants' past attempts to interfere with the judicial process or witnesses; (4) the potential that the defendants will suffer a lengthy incarceration if convicted; and (5) extensive publicity that could enhance the possibility that jurors' names would become public and expose them to intimidation and harassment." *United States v. Shryock*, 342 F.3d 948, 971 (9th Cir. 2003).

1. ███████████████████

████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████

███████████ While Mr. Termendjian obviously cannot respond to evidence the government fails to identify, other courts have expressed a healthy skepticism when the government has tried to tar defendants and deprive them of their constitutional rights merely through speculation and name-calling: "The invocation of the words 'organized crime,' 'mob,' or 'Mafia,' unless there is something more, does not warrant an anonymous jury." *United States v. Vario*, 943 F.2d 236, 241 (2d Cir. 1991); *see also United States v. Millan-Colon*, 834 F. Supp. 78, 84 (S.D.N.Y. 1993) ("[T]he Court cannot justify empaneling an anonymous jury on this basis of bare allegations of mob affiliation."); *United States v. Martin*, No. CR 07-1205 (A) CBM, 2009 WL 453111, at *2 (C.D. Cal. Feb. 20, 2009) (denying motion for anonymous jury when "the Government's allegations are markedly vague—there is

1 | no specific allegation identifying any actual organized crime syndicate of which
2 | either Defendant is a member").



1        2.    <u>Participation in a Group with Capacity to Harm Jurors</u>

2    The government's analysis under the second factor suffers from the same

3    infirmities as the first one. ████████████████████████████████████████

4    ████████████████████████████████████████████████████████████████████

5    ████████████████████████████████████████████████████████████████████

6    ████████████████████████████████████████████████████████████████████████

7    ██████████████████████████████████████████████████████████

8        3.    <u>Past Attempts to Interfere with the Judicial Process</u>

9    Mr. Termendjian has never been charged with witness tampering or

10   obstruction. He has been on pretrial release for over two years without incident.

11   ██████████████████████████████████████████████████████████████████

12   ██████████████████████████████████████████████████████████████████

13   ██████████████████████████████████████████████████████████████████

14   ██████████████████████████████████████████████████████████████████

15   ███████████████████████████████████████████████████████████████████

16   ███████████████████████████████████████████████████████████████

17   ████████████████████████████████

18     ███████████████████████████████████████████████████████████████████

19   ██████████████████████████████████████████████████████████████████

20   ███████████████████████████████████████████████████████████████

21   █████████████████████████████████████████████████████████████████

22   █████████████████████████████████████████████████████████

23   ██████████████████████████████████████████████████████████

24   █████████████████████████████████████████████████████████████████

25   ████████████████████████████████████████████████████████████████

26   ████████████████████████████████████████████████████████████████████████

27   ███████████████████████████████████████████████████████████████████

28   ████████████████████████████████████████████████████████████████



Even as vaguely alleged by the government, none of these allegations demonstrate a propensity to harm or intent to harm jurors or interfere with their ability to fairly judge the evidence in this case. Mr. Termendjian's history of sitting through a lengthy trial involving his brother without incident is far better evidence than are the vague statements offered by the government here.

4.    Potential for Lengthy Incarceration

The potential sentence length for Mr. Termendjian is hardly an "inducement to resort to extreme measures in any effort to influence the outcome of the trial." *Shryock*, 342 F.3d at 972 (quoting *Unites States v. DeLuca*, 137 F.3d 24, 32 (1st Cir. 1998)). In the cases in this District where anonymous juries have been empaneled,

1  the defendants have had likely sentences far greater than 12-15 years. *See*
2  *McElhiney*, 2007 WL 9676540, at *2 (death sentence); *see Shryock*, 342 F.3d at 972
3  (defendants received sentences between 32 years and life); *United States v.*
4  *Boyajian*, No. 16-50327, 2023 WL 3915966, at *2 (9th Cir. June 9, 2023)
5  (sentenced to 30 years); *Fernandez*, 388 F.3d at 1217 & 1245 (life sentences for
6  some defendants). A potential sentence of 12 to 15 years under the US Sentencing
7  Guidelines, while significant, is not so unusual such that Mr. Termendjian's
8  constitutional rights should be abridged.

9          5.    Publicity

10         The government provides nothing to support its claim that there has been
11  extensive publicity surrounding Mr. Termendjian's case. It cites to no media
12  coverage whatsoever. While there was extensive publicity around the Kingston and
13  Dermen case, counsel is aware of only a single *LA Times* article about this case that
14  was published shortly after *the government's press release* announcing Mr.
15  Termendjian's indictment in April 2023. That hardly qualifies as "extensive
16  publicity that could enhance the possibility that jurors' names would become public
17  and expose them to intimidation and harassment." *Shryock*, 342 F.3d at 371.

18          Taken together, these factors do not support the empanelment of an
19  anonymous jury. Two factors are not present at all and three factors are supported
20  entirely with *in camera* information which appears exceedingly weak but which Mr.
21  Termendjian cannot fairly contest, and which the Court should not consider unless
22  defense counsel is also given access. Given the government's failure to take any
23  action where it would have to support its allegations of witness tampering and
24  organized crime involvement with real evidence, the Court should have grave
25  concerns whether any of the *in camera* information is reliable. In sum, there is no
26  "strong reason to believe the jury needs protection." *Shryock*, 342 F.3d at 971.

27

28

**E.      Alternatively, the Court Should Order a Partially Anonymized Jury.**

For the reasons stated above, the Court should deny the government's Motion for an anonymous jury. But if the Court credits the government's arguments or evidence, at most the Court should order a partially anonymized jury, in which jurors will not be publicly identified in court or to Mr. Termendjian, but identifying information will still be provided to counsel. This is the procedure adopted in Mr. Dermen's 2020 trial in the District of Utah. And it is the procedure the government also requests as an alternative remedy in its Motion. Dkt. 98 at 12. In this case even that measure is unnecessary and unsupported by the facts and case law.

**IV.    CONCLUSION**

Mr. Termendjian's constitutional rights are jeopardized by the government's request for an anonymous jury. The government must offer strong evidence of juror endangerment before the Court circumscribes Mr. Termendjian's Fifth and Sixth Amendment rights. Because the government has failed to do so, its Motion should be denied.[7]

DATED:  September 4, 2025          Ariel A. Neuman
                                   William E. Johnston
                                   Michael C. Landman
                                   Devon E. Porter
                                   Bird, Marella, Rhow,
                                   Lincenberg, Drooks & Nessim, LLP


                                   By:  _____
                                          Ariel A. Neuman
                                        Attorneys for Defendant Grigor
                                        Termendjian

---

[7]   Mr. Termendjian has no objection to non-public voir dire of sensitive topics with prospective jurors.

1

2

## **<u>CERTIFICATE OF COMPLIANCE</u>**

3

        The undersigned, counsel of record for Defendant Grigor Termendjian,

4

certifies that this brief contains 5,308 words, which complies with the word limit of

5

L.R. 11-6.1.

6

7

DATED:  September 4, 2025                           _____

8

                                                                        Ariel A. Neuman

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28