Ariel A. Neuman - State Bar No. 241594
    aneuman@birdmarella.com
William E. Johnston - State Bar No. 287707
    wjohnston@birdmarella.com
Michael C. Landman - State Bar No. 343327
    mlandman@birdmarella.com
Alexander H. Tran - State Bar No. 338940
    atran@birdmarella.com
BIRD, MARELLA, RHOW,
LINCENBERG, DROOKS & NESSIM, LLP
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Defendant Grigor Termendjian

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 2:23-CR-00453-JLS |
| Plaintiff, | **DEFENDANT GRIGOR TERMENDJIAN'S OPPOSITION TO GOVERNMENT'S *EX PARTE* APPLICATION FOR POST-INDICTMENT RESTRAINING ORDER UNDER 21 U.S.C. § 853(e)(1)(A)** |
| vs. | |
| GRIGOR TERMENDJIAN, | |
| Defendant. | Assigned to Hon. Josephine L. Staton |

# TABLE OF CONTENTS

Page

I.   INTRODUCTION .................................................................................................. 1

II.  BACKGROUND .................................................................................................. 1

III. NO URGENT CIRCUMSTANCES EXIST WARRANTING THE
     EXTRAORDINARY RELIEF REQUESTED ................................................... 2

IV.  THE GOVERNMENT'S ASSUMPTIONS ABOUT HOW AN LLC
     OPERATES ARE INCORRECT, AND ITS PROPOSED ORDER IS
     UNWORKABLE ................................................................................................. 4

V.   FUTURE LEASE REVENUES ARE NOT SUBJECT TO PRETRIAL
     RESTRAINT ....................................................................................................... 6

     A.   Future Lease Revenues Are Newly Generated Income, Not
          Assets Existing at the Time of the Alleged Offense. ............................. 6

     B.   Future Lease Revenues Are Substitute Assets Not Subject to
          Restraint At This Time. .......................................................................... 8

VI.  IF THE COURT IMPOSES RELIEF, ANY ORDER SHOULD BE
     NARROWLY TAILORED. .................................................................................. 9

VII. CONCLUSION .................................................................................................. 11

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*United States v. Jarvis*,
   499 F.3d 1196 (10th Cir. 2007)...........................................................................8

*United States v. Lazarenko*,
   476 F.3d 642 (9th Cir. 2007)...............................................................................6

*United States v. Ripinsky*,
   20 F.3d 359 (9th Cir. 1994)..............................................................................8, 9

**Federal Statutes**

18 U.S.C. § 982(a)(1) ..............................................................................................7

21 U.S.C. § 853(c) ...................................................................................................6

21 U.S.C. § 853(n)....................................................................................................7

## I.    INTRODUCTION

Without prior notice or any effort to meet and confer, the government seeks extraordinary relief that extends well beyond preserving allegedly forfeitable assets and attempts to seize future lease income generated through commercial activity that will take place years after the alleged offense conduct ended.  Specifically, the government seeks to (1) to restrain the real property located at 9153 Stellar Court in Corona, California (the "Subject Property"); (2) seize "profits of the lease" executed by non-party 9153 Stellar Court LLC (the "LLC") with a third-party tenant; and (3) compel the LLC to undertake ongoing accounting, reporting, and payment obligations exclusively for the government's benefit.  Mr. Termendjian does not oppose an order restraining the Subject Property, but an order extending to the lease profits and requiring reporting obligations by the LLC (which the government concedes has another owner as well) is inappropriate.  Accordingly, the *ex parte* application should be denied.

Solely in the alternative, if the Court finds that some restraint is warranted, the Court should narrow the government's proposed order to restrain only the Subject Property, and any other aspects of the proposed order should be narrowed and tailored to preserve the government's asserted interest without unnecessarily burdening business operations or sweeping in assets that have no nexus to the charged conduct, as set forth herein.

## II.    BACKGROUND

The government's indictment alleges that Mr. Termendjian participated in a fraud and money laundering scheme tied to renewable fuel tax credit claims.  The July 2025 Superseding Indictment alleges a conspiracy that took place between approximately 2012 and continuing through 2020, and seeks forfeiture of, among other assets, the real property located at 9153 Stellar Court in Corona, California – i.e., the Subject Property.  (ECF No. 85, Superseding Indictment ¶¶ 10, 17; Forfeiture Allegation ¶ 2(a)(i).)

1

DEFENDANT GRIGOR TERMENDJIAN'S OPPOSITION TO *EX PARTE* APPLICATION FOR POST-INDICTMENT RESTRAINING ORDER UNDER 21 U.S.C. § 853(e)(1)(A)

On June 29, 2026, without prior notice to the defense or any effort to meet and confer, the government moved *ex parte* for an order to restrain the Subject Property, seize "profits of the lease," and impose reporting obligations on a non-party LLC.[1]  (*See* ECF No. 194-4, Government's Proposed Order.)  The government alleges that Mr. Termendjian is a 50% owner of the LLC, and seeks to seize any profits that would otherwise be distributed to him, but does not establish that any profits would in fact be distributed from the LLC (i.e., that any distributions are expected).  The government's *ex parte* comes five months after, according to the government, the LLC executed a six-year lease to lease the Subject Property at a monthly rental rate of approximately $38,816.00.  (ECF No. 194, *Ex Parte* Application (the "Application"), at 2; *see also* ECF No. 194-2, Ex. A.)  The government alleges upon "information and belief" that the lease "will not become profitable until later this summer."  (Application at 2-3 (citing Ex. B).)  The government provides no explanation as to what "later this summer" means.

Trial is set for just over three months from now: October 13, 2026.

## III.   NO URGENT CIRCUMSTANCES EXIST WARRANTING THE EXTRAORDINARY RELIEF REQUESTED

The government seeks extraordinary, *ex parte* relief, yet its Application contains no facts showing that the Subject Property is at risk of being sold, transferred, encumbered, or otherwise rendered unavailable pending trial.  *See* Chambers' Procedures ("Ex parte applications are for extraordinary relief only. When seeking relief by filing an ex parte application, the filing party must demonstrate that the need for ex parte relief is *not due to the lack of the party's diligence*." (emphasis added)).  *Ex parte* applications are intended to address true emergency situations that cannot be heard on the regularly-noticed motion schedule,

---

[1]   It is unclear by what authority the government believes the Court can compel any such reporting by a third party, which has its own First Amendment rights.

DEFENDANT GRIGOR TERMENDJIAN'S OPPOSITION TO *EX PARTE* APPLICATION FOR POST-INDICTMENT RESTRAINING ORDER UNDER 21 U.S.C. § 853(e)(1)(A)

but here the government makes no showing of any such emergency, or even any exigency at all.  For instance, the government identify any risk that the Subject Property is being sold, its value being diminished, or anything else is happening imminently (or at all) to suggest that *ex parte* relief is necessary or warranted here.  Similarly, it does not even attempt to establish that lease revenues generated will be distributed to Mr. Termendjian on any schedule that is coming up any time soon, or that they will disappear absent immediate intervention.  Indeed, the government offers nothing more than the conclusory assertion that the "property in question is under the defendant's control" and that Mr. Termendjian "may take steps to place the property outside of the jurisdiction of the court."  (ECF No. 194-1 at 2.)  These speculative statements are unsupported by any facts demonstrating an actual risk of dissipation, concealment, or transfer, and do not support *ex parte* relief under this Court's rules.

The government's failure to even allege with any concrete basis any imminent dissipation is particularly troubling where the government's request is not limited to maintaining the status quo in advance of the trial that will occur in less than three months.  That is, the government does not merely seek to prevent transfers of the Subject Property.  Instead, it seeks an order compelling a non-party LLC to make ongoing payments to the Treasury Forfeiture Fund from a lease that the government vaguely concedes "will not become profitable until later this summer."  (Application at 2-3.)  It asks the Court to impose sweeping obligations on that non-party LLC, including calculating lease profits, reporting lease revenues and expenses, and providing notice of each payment to the Government, all to preserve an amount that, at most, is approximately $57,000.[2]  Practically speaking, this would effectively

---

[2]   Even if the lease was presently profitable and all lease payments were distributed to the owners immediately upon payment, contrary to the government's assertions, the requested relief would preserve only Mr. Termendjian's purported 50% share of approximately three months of lease proceeds before the October 2026 trial,

convert the LLC into an unpaid administrator for the government, requiring the LLC to perform *and report* monthly accounting, including expense allocation and profit calculations, while potentially having to justify any reserves it determines are required, any obligations it has or does not have under the LLC operating agreement.  Indeed, there is no apparent way to provide the relief the government seeks without imposing those ongoing administrative and reporting obligations on the LLC, yet the government identifies no authority authorizing the Court to require a non-party entity to undertake such duties.

With no explanation for its delay or lack of diligence, the government waited more than a year after the Superseding Indictment and more than five months after the lease was executed before seeking this extraordinary relief, without any effort to consult with any of the interested parties and now on the eve of trial.  Before imposing such a burdensome remedy, the government should be required to identify some concrete risk that the Subject Property or the associated revenue stream will become unavailable, which it has failed to do.  Instead, by proceeding via *ex parte* application and without prior notice to anyone, the government forced Mr. Termendjian to hastily respond to this complex and inequitable request.  *Ex parte* relief is inappropriate under these circumstances and the Application should be denied.

## IV.    THE GOVERNMENT'S ASSUMPTIONS ABOUT HOW AN LLC OPERATES ARE INCORRECT, AND ITS PROPOSED ORDER IS UNWORKABLE

Regardless of the merits of the government's Application, it does not seem to understand how an LLC operates and its proposed order is unworkable.  For

---

amounting to roughly $57,000 (approximately $38,000 rent × 3 months × 50% = approximately $57,000), hardly the circumstance warranting extraordinary *ex parte* relief.

instance, the government acknowledges but does not meaningfully address the fact that the LLC has ongoing expenses and, as a landlord, will experience unexpected costs that will impact its ability to distribute any supposed profits to the owners of the LLC.  The government does not deal with the fact that just because a lease payment comes into the LLC does not mean a distribution to owners will necessarily follow; that is typically not how LLCs work, as they must maintain enough operating capital to pay for ongoing expenses and obligations.  Here, the government provides no information about the LLC's distribution obligations, but appears to (wrongly) assume that each lease payment from the tenant is somehow immediately netted out to pay for expenses and then remaining amounts are automatically distributed to the owners.  That is now how LLCs work and there is no evidence that Mr. Termendjian will start receiving distributions at any point "later this summer" or otherwise.

The proposed order is itself vague and unworkable.  For instance, the government's proposed order is unclear as to when the reporting obligations would begin, when reporting obligations would arise, or even when payment obligations to the government would begin.  Further, while the proposed order requires the LLC's representative to notify the government of the "date and amount of each payment," it is unclear whether that refers to a lease payment from the tenant, an expense payment by the LLC, or a profit distribution to the owners.  And while the LLC's representative would be required to notify the government of "the lease payment and expense details associated with each payment within three days of such payments," it is unclear what this means, and (again, wrongly) assumes that each lease payment has expenses directly associated with it.  Again, most LLCs that own real estate maintain operating capital in order to address expenses, and do not simply calculate on a lease-payment-by-lease-payment basis what the expenses will be.

Here, the government appears to essentially seek to prevent the LLC – a non-party to this litigation of which Mr. Termendjian is, according to the government,

5

just a 50% owner – from maintaining an operating account necessary to meet ongoing expected and unexpected obligations.  The potential impact and hardship on the LLC is not considered or addressed by the government's Application, and weighs against imposing the proposed restraints.  Indeed, preventing the LLC from maintaining sufficient reserves and operating account would have the perverse effect of diminishing the value of the Subject Property, exactly what the government claims to seek to prevent.

## V.    FUTURE LEASE REVENUES ARE NOT SUBJECT TO PRETRIAL RESTRAINT

### A.    Future Lease Revenues Are Newly Generated Income, Not Assets Existing at the Time of the Alleged Offense.

The government seeks to restrain future income that did not exist at the time of the alleged offense (and does not even exist now), and has not been shown to be traceable to the charged conduct after years of intervening events.  The authority to restrain assets is constrained by 21 U.S.C. § 853(c), which provides that the government's interest in forfeitable property vests "upon the commission of the act giving rise to forfeiture."  *See* 21 U.S.C. § 853(c); *see also United States v. Lazarenko*, 476 F.3d 642, 647-48 (9th Cir. 2007) (explaining that "[f]orfeiture relates back to the time of the criminal acts giving rise to the forfeiture. . . . In other words, the United States' interest in the property vests at the time the defendant commits the crime.").

In its Application, the government seeks to restrain lease revenues that did not exist at the time the crime was allegedly committed, do not yet exist, and will allegedly be generated in the future under a commercial lease running from 2026 through 2032.  But the future lease income did not exist when the alleged offense occurred in approximately 2012 and continuing through at least 2020. (Superseding Indictment ¶ 17.)  Thus, the government's interest could not have vested at the time "of the act giving rise to forfeiture."  21 U.S.C. § 853(c).

6

The government simply assumes that because it alleges the underlying Subject Property is forfeitable, all future lease revenues are likewise subject to restraint. (*See* Application at 8 ("The property traceable to such property, the lease payments generated from the Subject Property, are also subject to forfeiture by statute.").) But 18 U.S.C. § 982(a)(1) requires the government to demonstrate that the property it seeks to restrain was "involved in" or is "traceable to" the charged offense. *See* 18 U.S.C. § 982(a)(1); (Proposed Order ¶ 2). The government offers no meaningful tracing analysis showing how lease payments generated at least six years after the alleged conduct remain sufficiently connected to the offense, despite the intervening acts of tenant occupancy, lease performance, property maintenance, and ongoing business operations.

For example, between the time this case commenced and the filing of the government's Application, significant capital has been invested by the non-party LLC and owners to repair, improve, and prepare the premises for leasing and substantial property taxes and other maintenance expenses have been paid. As a result, the future revenues arise from a series of intervening events – including tenant occupancy, lease performance, property management, maintenance, capital improvements and other ongoing commercial activity – rather than directly from the alleged offense itself and are therefore fundamentally distinct from the allegedly forfeitable Subject Property.

In its Application, the government simply assumes the lease revenues are traceable to the alleged offense and thus forfeitable merely because they are generated by the Subject Property, while ignoring years of property taxes, insurance payments, maintenance, and capital improvements that was funded with legitimate and separate money from the LLC and owners.[3] Accordingly, because the

---

[3] The government's assertion that third parties may seek relief through an ancillary proceeding under 21 U.S.C. § 853(n) following entry of the preliminary forfeiture

7

government demonstrated no nexus between the future lease income and the government's interest which vested at the time of the commission of the offense, the future lease income cannot be subject to pretrial restraint.

### B.    Future Lease Revenues Are Substitute Assets Not Subject to Restraint At This Time.

Because the government failed to establish that future lease revenues generated years after the alleged offense are traceable to the charged conduct, those revenues are substitute assets, which are not subject to pretrial restraint under binding Ninth Circuit authority.

Section 853(e) authorizes pretrial restraint only of "property described in subsection (a)," meaning property that constitutes proceeds of the offense, property traceable to those proceeds, or property used to facilitate the offense. By contrast, substitute or untainted assets cannot be restrained before conviction. *See United States v. Ripinsky*, 20 F.3d 359 (9th Cir. 1994). In *Ripinsky*, the Ninth Circuit held that § 853(e) "does not authorize the pretrial restraint of substitute assets" because Congress limited the statute's reach to property described in § 853(a), not the broader category of assets that may become forfeitable under § 853(p). *Id.* at 363-65; *see also United States v. Jarvis*, 499 F.3d 1196, 1204-05 (10th Cir. 2007) (holding that government has only a "potential and speculative future interest" in substitute assets prior to conviction and the fulfillment of certain statutory conditions found in § 853(p)(1)(A)-(E)).

Here, the government seeks an order requiring the seizure of at least 50% of the projected future lease income. (Proposed Order at 3.) Because all of the lease revenue here will be generated in 2026 and later (six years or more after the alleged

---

order ignores the procedural posture of this case. (Application at 7-8.) The government is seeking *post-indictment, pretrial restraint* under § 853(e), not the entry of a preliminary order of forfeiture following a conviction.

DEFENDANT GRIGOR TERMENDJIAN'S OPPOSITION TO *EX PARTE* APPLICATION FOR POST-INDICTMENT RESTRAINING ORDER UNDER 21 U.S.C. § 853(e)(1)(A)

offense ended in 2020) and the government has not demonstrated that those revenues remain directly traceable to the alleged offenses, the money seized by government could, at most, be substitute assets under § 853(p).  The government has provided no evidence to the contrary and no basis for departing from the well-established rule that such separate assets are not subject to pretrial seizure.  *See Ripinsky*, 20 F.3d at 363-65.  Indeed, the government seeks to restrain not an existing asset, but future revenues that have not yet been generated and may never materialize as projected.  As a result, while the government may be able to prohibit Mr. Termendjian from selling or otherwise transferring the Subject Property, it should not be permitted to restrain the future income from the lease.  The government has failed to establish a sufficient nexus between those future revenues and the charged conduct such that warrants the extraordinary relief it requests.

## VI.    IF THE COURT IMPOSES RELIEF, ANY ORDER SHOULD BE NARROWLY TAILORED.

In the alternative, and only if the Court determines that restraint is necessary, it should reject the government's overbroad and unworkable proposed order and issue one that is narrowly tailored to preserve the seized assets.  The government's proposed order has numerous defects which will adversely impact the Subject Property's value and potentially disrupt ordinary business operations.  First, the proposed order applies broadly to "lease payments" and "profits" interchangeably; this is problematic in itself as lease payments are gross revenue, profits are net revenue, and neither is a distribution from the LLC.  This problematic verbiage is compounded by the fact that the government only alleges that 50% of the net profits are forfeitable, and so using words interchangeably would not even have the effect the government seeks.  These distinctions are meaningful because the financial projections submitted by the government reflect that rental income is used to pay ongoing property expenses, including utilities, property taxes, insurance, commission fees to a real estate brokerage firm, and other maintenance costs.  (*See*

ECF No. 194-3, Ex. B (showing projected rental income alongside expenses for water, Edison, property taxes, commissions, cleaning, repairs, insurance, association fees, and California FAIR Plan payments).)

Second, the proposed order assumes that lease payments come in, expenses are immediately deducted, and the net is paid out to the owners. As discussed above, that is not how an LLC that owns real property operates. As just one example, if the LLC receives $38,816 in monthly rent but knows a $20,000 roof repair will be required the following month, the proposed order provides no guidance on whether the LLC may reserve funds for that expense, how annual insurance premiums should be treated, whether funds for capital improvements can be maintained by the LLC, or who decides whether a particular expense is reasonable and not within purview of the order. Imposing the sort of order the government seeks would require the Court to weigh in on what operating expenses may be maintained in an operating account rather than distributed, and how any purported net distributions are to be calculated before funds become subject to restraint. That is not the Court's role and the LLC and third-party owner would have an interest in being heard before any such controls were imposed.

Second, the proposed order goes well beyond preserving assets and risks burdening the day-to-day operation of a non-party business by requiring the LLC to calculate profits, make recurring payments to the Treasury Forfeiture Fund, and provide ongoing reports to the government. The government cites to no authority and provides no meaningful justification to require a non-party LLC to become a reporting party. Accordingly, in the event the Court authorizes some restraint here, the Court should impose the least restrictive means necessary to preserve the disputed assets pending resolution of the case.

In short, if the Court believes the government has demonstrated probable cause to restrain the Subject Property *and* the future lease income, the proposed order should be subject to the following limitations:

10

DEFENDANT GRIGOR TERMENDJIAN'S OPPOSITION TO *EX PARTE* APPLICATION FOR POST-INDICTMENT RESTRAINING ORDER UNDER 21 U.S.C. § 853(e)(1)(A)

1. Clarify that the LLC has no distribution obligations beyond those imposed by any governing operating agreements or similar documents, and may maintain an operating account to pay for expected and unexpected business expenses in any amount deemed reasonable by the LLC's manager, and may maintain reasonable reserves for anticipated and unanticipated business expenses.

2. Limit any restraint to 50% of actual distributions to the LLC owners, if any, rather than gross lease payments or lease revenues, and require that such moneys be placed into an escrow account administered by a neutral third party rather than paid to the government.

3. Exclude any requirement that the LLC or its representative make any reports to the government.

Such reasonable limitations would preserve the government's asserted interest without unnecessarily burdening business operations and third parties which have no nexus to the charged conduct.

## VII.   CONCLUSION

For these reasons, the Court should deny the government's Application.  If the Court grants the Application, the Court should narrowly tailor the proposed order to impose the least restrictive means necessary to preserve the disputed assets pending resolution of the case.

DEFENDANT GRIGOR TERMENDJIAN'S OPPOSITION TO *EX PARTE* APPLICATION FOR POST-INDICTMENT RESTRAINING ORDER UNDER 21 U.S.C. § 853(e)(1)(A)

DATED:  July 1, 2026          Respectfully submitted,

Ariel A. Neuman
William E. Johnston
Michael C. Landman
Alexander H. Tran
Bird, Marella, Rhow,
Lincenberg, Drooks & Nessim, LLP


By:
      Ariel A. Neuman
      Attorneys for Defendant Grigor
      Termendjian

12