TODD BLANCHE
Acting Attorney General
BILAL A. ESSAYLI
First United States Attorney
JENNIFER L. WAIER
Chief Assistant United States Attorney
Chief, Criminal Division
RICHARD M. ROLWING (OH Bar No. 0062368)
Senior Litigation Counsel
MEGAN L. JONES (CA Bar No. 348651)
Trial Attorney
National Fraud Enforcement Division, Tax Section
950 Pennsylvania Ave. NW
Washington D.C. 20530
Telephone: (202) 598-5471
E-mail: Richard.m.rolwing@usdoj.gov

Attorneys for the United States

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff<br>v.<br>GRIGOR TERMENDJIAN,<br>Defendant. | No. 2:23-CR-00453-JLS<br><br><u>GOVERNMENT'S MOTION IN LIMINE 2 SEEKING TO PRECLUDE THE DEFENDANT FROM INVITING JURY NULLIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES</u><br><br>Hearing Date: December 17, 2026<br>Hearing Time: 1:30 p.m.<br>Location: Courtroom of the Hon. Josephine L. Staton |

Plaintiff United States of America, by and through its undersigned counsel, hereby files its Motion in Limine #2 to preclude the defendant from arguing or presenting evidence regarding jury nullification.

While the defense has stated that it intends to ask the jury to follow the law as it is provided by this Court, this motion seeks to preclude specific instances that could be inferred to seek nullification.

This Motion in Limine is based upon the attached memorandum of points and authorities and the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: October 29, 2026

Respectfully submitted,

COLIN M. MCDONALD
Assistant Attorney General
National Fraud Enforcement Division

*/s/ Megan L. Jones*
RICHARD M. ROLWING
Senior Litigation Counsel
MEGAN L. JONES
Trial Attorney

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

On July 22, 2025, a grand jury returned a 6-count Superseding Indictment charging Defendant Grigor Termendjian with a conspiracy to commit disguise and conceal and expenditure money laundering, a conspiracy to defraud the United States and the IRS, and four substantive disguise and conceal money laundering transactions. ECF No. 85. The Bills of Particulars describe forfeiture of specific property traceable to the charged money laundering offenses and the money laundering conspiracy.

Defendant's brother and his associates defrauded the US using the mails and wires, of over $470 million. Between 2012 and 2016, Jacob Kingston and his close family members associated with Washakie Renewable Energy, LLC, in Utah filed 19 false claims for refund claiming that Washakie had produced, blended and/or sold over one billion gallons of biodiesel and renewable fuel products. Kingston agreed with Defendant's brother, Lev Dermen[1], to submit these false claims for refund while employing a dizzying scheme of rotating renewable fuel products, paperwork, and money to make it appear that Washakie was in the business of generating this volume of biodiesel. After Dermen got involved with Jacob Kingston and Washakie in early 2012, the Kingstons received over $470 million in refund checks from

---

[1] Lev Aslan Dermen, aka "the lion," and once known as Levon Termendzhyan and Levon Termendjian, is Defendant Grigor Termendjian's brother. After they were charged, tried twice, and ultimately acquitted in the 1990's for fuel tax fraud, Levon Termendjian legally changed the spelling of his last name to Levon Termendzhyan. Then, in 2017, during the time period he was under investigation for stealing and laundering these proceeds, Levon Termendzhyan again legally changed his name. This time he changed his full name to Lev Aslan Dermen (Lev means "lion" in Armenian, Aslan means "lion" in Turkish).

the United States, all based on fraudulent claims of biodiesel and renewable fuel production and sales.

Dermen's role was to extend the protection of his claimed longstanding "umbrella" of corrupt law enforcement, referred to as "the boys," to Jacob Kingston and his family. He explained that the boys had been protecting he and his family for years. This purported protection deceived the Kingstons into believing that, through Washakie, they could, without consequence, continue to defraud the United States in larger and larger amounts, for the benefit of themselves and Dermen, and could continue to launder Dermen's share of the fraud proceeds to Dermen's associates, which included his brother, all at Dermen's direction.

The Kingstons spent around $200 million of the proceeds on the rotation scheme of fuel products, and another approximately $100 million on the buildout of the Washakie plant to make it look like it was capable of the kind of production being claimed. The Kingstons transferred approximately $40 million of the proceeds to their extended family known as the Order. At Lev Dermen's instruction, the Kingstons laundered his share of the proceeds, over $146 million, to a variety of associates of Dermen in the US, Belize, Turkey and Luxembourg. All the while, Jacob Kingston was led to believe that Dermen was using much of his share of these fraud proceeds to pay bribes to "the boys" to keep the Kingstons and Dermen and his associates within this umbrella of protection.

## II. ARGUMENT

The United States moves to bar Defendant from inviting jury nullification through the questioning of witnesses, in opening or closing statements to the jury, or otherwise. Defendant cannot ask

the jury to nullify the law. *See United States v. Kleinman*, 880 F.3d 1020, 1031 (9th Cir. 2017). Although the government cannot anticipate every form of argument or evidence the Defendant might seek to introduce at trial, the government notes at least the examples below of potential jury nullification:

**A. Claims of Selective or Vindictive Prosecution, or "Outrageous" Government Conduct**

Claims of improper conduct by the government offer no defense to the criminal charges and are not relevant to the merits of the charges. "A selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." *United States v. Armstrong*, 517 U.S. 456, 463 (1996). "[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978).

Because claims of alleged government conduct are irrelevant to the merits of criminal cases, suggesting to the jury that alleged misconduct provides a basis for acquittal is an invitation for jury nullification. For example, Defendant might improperly suggest to the jury that the government's investigation or prosecution was abusive and violated legal or ethical requirements. Such allegations are irrelevant (and in this case, untrue) to the jury's decision and serve no purpose other than to distract the jury from legally relevant matters.

Further, a selective prosecution claim is one based on "defects in the institution of the prosecution" and must be asserted before trial. Fed. R. Crim. P. 12(b)(1). Therefore, Defendant must make claims of selective prosecution or outrageous government conduct in the pre-trial stage.

**B. Arguments Relating to the United States' Motivation for Prosecution**

Pursuant to Rule 403, the Court should bar any reference to the government's alleged motivation in bringing the prosecution, even if – contrary to law – the government's motivations were somehow relevant. Courts have broad discretion to admit or exclude evidence under Rule 403, which provides, in part, that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

Challenging the government's motivations in front of the jury would violate Rule 403, as it would open the door to a full presentation by the government about the background of the investigation, its information regarding other activities of Defendant, and the government's charging procedures and decisions. Thus, Defendant's charge and the government's response would create a mini-trial that would waste time and confuse the issues that are properly before the jury. *See, e.g.*, *United States v. Johnson*, 605 F.2d 1025, 1030 (7th Cir. 1979) (en banc) (defendant's claim that the indictment was a "political instrument," even if relevant, was properly excluded pursuant to Rule 403 because it was an "extraneous

and collateral matter" unrelated to the particular transactions at issue); *cf. United States v. Young*, 470 U.S. 1, 13 (1985) ("the better remedy" is for the district court to "deal with the improper argument of the defense counsel promptly and thus blunt the need for the prosecutor to respond").

**C. Arguments that Defendant should not have been Charged Criminally**

The fact that the government deemed it appropriate to pursue Grigor Termendjian criminally was within its discretion and should not be the basis for argument by Defendant. Accordingly, the Defendant should be precluded from arguing or presenting evidence that this criminal prosecution should have remained a civil or forfeiture collection effort.

Argument or evidence that the government could or should have resolved this case using administrative or civil remedies, rather than criminal prosecution, is improper. The existence of civil tax or forfeiture procedures and remedies, and the government's decision to use or forego these procedures and remedies, is irrelevant to the issue of criminal liability. See *United States v. Buras*, 633 F.2d 1356, 1360 (9th Cir. 1980). Courts have held that the government need not pursue or complete civil administrative or judicial proceedings prior to instituting criminal tax proceedings. *See United States v. Voorhies*, 658 F.2d 710, 714-715 (9th Cir. 1981); *United States v. Merrick*, 464 F.2d 1087, 1093 (10th Cir. 1972) (affirming district court's refusal to instruct the jury "that a civil case might be brought against the Defendant to recover unpaid taxes, interest and penalties" because there is "no relevance in such an instruction"); *United States v. Ellett*, 527 F.3d 38, 40 (2d Cir. 2008) ("We join the

First, Sixth, Seventh and Ninth Circuits in holding that due process does not require the government to adjudicate tax disputes civilly or administratively before proceeding to criminal prosecution for tax evasion.”).

**D. References to Potential Penalties Defendant Faces**

Argument or evidence about potential penalties faced by a defendant is improper because it is irrelevant to the jury’s determination of guilt or innocence. *See, e.g., Shannon v. United States*, 512 U.S. 573, 579 (1994) (“It is well established that when a jury has no sentencing function, it should be admonished to reach its verdict without regard to what sentence might be imposed.”) (internal quotation and citation omitted). Mention of the potential penalties faced by the Defendant would improperly invite the jury to consider the penal consequences of a conviction and, ultimately, nullification. *See, e.g., Rogers v. United States*, 422 U.S. 35, 40 (1975) (“the jury ha[s] no sentencing function and should reach its verdict without regard to what sentence might be imposed.”).

The defense should be precluded from mentioning in any way the potential penalties Defendant faces. Evidence or argument related to the potential penal consequences Defendant would face if convicted – whether they involve specific references to years in jail, or general arguments that “the defendant is on trial for his life,” or “the defendant’s freedom hangs on the outcome of the jury’s decision,” – are prejudicial and must be barred.

**III. CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court grant the government’s motion.

Certificate of Compliance

The undersigned, counsel of record for the government, certifies that this brief contains 1865 number of words, which:

X complies with the word limit of L.R. 11-6.1.

complies with the word limit set by the court.

Dated: October 29, 2026

*/s/ Megan L. Jones*
RICHARD M. ROLWING
Senior Litigation Counsel
MEGAN L. JONES
Trial Attorney

Certificate of Service

I certify that on the 29th of October, 2026, I caused a copy of the foregoing to be filed through the CM/ECF electronic filing system, thereby providing notice to all parties of record in this case.

*/s/ Megan L. Jones*
Megan L. Jones
Trial Attorney