TODD BLANCHE
Acting Attorney General

BILAL A. ESSAYLI
First United States Attorney

JENNIFER L. WAIER
Chief Assistant United States Attorney
Chief, Criminal Division

RICHARD M. ROLWING (OH Bar No. 0062368)
Senior Litigation Counsel
MEGAN L. JONES (CA Bar No. 348651)
Trial Attorney
National Fraud Enforcement Division, Tax Section
950 Pennsylvania Ave. NW
Washington D.C. 20530
Telephone: (202) 598-5471
E-mail: Richard.m.rolwing@usdoj.gov

Attorneys for the United States

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff<br><br>v.<br><br>GRIGOR TERMENDJIAN,<br><br>Defendant. | No. 2:23-CR-00453-JLS<br><br>GOVERNMENT'S NOTICE OF INTENT TO OFFER FOREIGN EVIDENCE UNDER FEDERAL RULE OF EVIDENCE 807 AND TITLE 18 U.S.C. 3505 |

The United States of America, by and through its undersigned counsel, hereby files this notice of intent to offer foreign bank records and documents under Federal Rule of Evidence 807, the residual hearsay exception. Additionally, the United States of America provides notice of its intent to offer foreign records of regularly conducted activity, pursuant to the provisions of Title 18, United States Code, Section 3505.

## I. INTRODUCTION

This notice encompasses records obtained from two nations: Luxembourg and Turkey.

Records from Luxembourg were requested via MLAT. Luxembourg produced records that were accompanied by a certificate attesting that they had been seized by the Luxembourg government. These documents were produced to the defendant.

Records from Turkey were requested via MLAT. The government received records from Garanti Bank and Ziraat Bank in late 2025 and early 2026. However, the records produced by Turkish banks were not accompanied by certificates of authenticity. According to the Department of Justice Office of International Affairs, "Turkey does not typically provide signed certificates of authenticity in response to MLAT requests, even when we have specifically asked for them; this has been a long standing issue that we have repeatedly raised." The government is continuing its endeavors to obtain the certificates, but cannot guarantee that any will be available by the time of trial.

In addition to the Turkish bank records obtained through official channels, the government has obtained Turkish bank records from an individual who will testify at trial. These bank records are from the same institutions and include the same time periods as the bank records obtained from the nation of Turkey. Although these records are also not accompanied by a certificate of authenticity, their accuracy will be attested to by the aforementioned witness.

## II. NOTICE OF INTENT TO OFFER EVIDENCE UNDER 18 U.S.C. § 3505

The United States provides notice of its intent to admit the following foreign business records under 18 U.S.C. § 3505:

| Bates Range | Record Description |
|---|---|
| WASH-LUX-0004995 – WASH-LUX-0004995_00003 | Records from Luxembourg |
| WASH-LUX-001269 – WASH-LUX-001277 | Records from Luxembourg |
| WASH-0748480 – WASH-0748557<br><br>WASH-0748806 - WASH-0748827 | Ziraat Bank Records in Turkish |
| WASH-0748480-ENGL - WASH-0748480-ENGL.087<br><br>WASH-0748800 - WASH-0748804 | Ziraat Bank Records in English |
| WASH-0750990 - WASH-0750991 | Garanti Bank records in Turkish |
| WASH-0751083 - WASH-0751121 | Garanti Bank records in English |

**A. Standard for Admissibility**

Section 3505 allows the admission of foreign records of regularly conducted activity if supported by a signed certification. *United States v. Jawara*, 474 F.3d 565, 584 (9th Cir. 2007). The certification must attest to the following:

> (A) such record was made, at or near the time of the occurrence of the matters set forth, by (or from information transmitted by) a person with knowledge of those matters;
> (B) such record was kept in the course of a regularly conducted business activity;
> (C) the business activity made such a record as a regular practice; and
> (D) if such record is not the original, such record is a duplicate of the original;

18. U.S.C. § 3505(a)(1). Under the rule, this certification also authenticates the record, removing the need for a live witness. *Id.* "Congress enacted § 3505 not 'to add technical roadblocks to the admission of foreign records, but, rather, to streamline the admission of such records…Further, § 3505 did not change the benchmark question in this and every situation involving the admission of documentary evidence: do the documents bear the indicia of reliability?'" *Id.* (quoting *United States v. Strickland*, 935 F.2d 822, 831 (7th Cir. 1991).

The records from Luxembourg are accompanied by a certification that the documents were seized by the Luxembourg government. However, because the documents were not provided by the business itself, the certification does not attest to the facts typical of a business record as set forth in 18. U.S.C. § 3505. Still, the documents bear the "indicia of reliability," *Strickland*, 935 F.2d at 831, because they are accompanied by an attestation from the nation of Luxembourg that the documents were seized directly from their custodian. Additionally, the records are corroborated by records provided by a government witness and produced to defense. Thus, the government asks that the court admit the records under 18. U.S.C. § 3505.

As for the records from Turkey, the government continues its endeavor to obtain certificates of authenticity. If these certifications are obtained, then the government will provide the certifications to the defense and the Court to supplement its request to introduce these records into evidence under 18. U.S.C. § 3505.

**III. NOTICE OF INTENT TO OFFER EVIDENCE UNDER RULE 807**

Given the recent completion of the translation of the most recent production of Turkish bank records in response to the MLAT,

the United States and the defense continue to examine the translated versions to determine what records are relevant and potentially admissible. The parties will meet and confer on the future date around the time of the disclosure of the exhibits regarding these foreign records.

At this time, however, the United States can provide notice of its intent to offer for admission into evidence these same records from Turkey described above, and these additional records obtained from a foreign witness under Federal Rule of Evidence 807:

| Records obtained from Turkey via MLAT | |
|---|---|
| Bates Range | Record Description |
| WASH-0748480 – WASH-0748557<br><br>WASH-0748806 – WASH-0748827 | Ziraat Bank Records in Turkish |
| WASH-0748480-ENGL – WASH-0748480-ENGL.087<br><br>WASH-0748800 – WASH-0748804 | Ziraat Bank Records in English |
| WASH-0750990 – WASH-0750991 | Garanti Bank records in Turkish |
| WASH-0751083 – WASH-0751121 | Garanti Bank records in English |
| Records obtained from witness | |
| WASH-0653901_00002 | Ziraat Bank records, Komak ISI Yalitim Sistemleri San ve tic LTD. USD account ending 5002 |
| WASH-0734613_00004 | Ziraat Bank records, Komak account |
| WASH-0657013 | Garanti Luxembourg Records, Isanne S.A.R.L. account |

| | |
|---|---|
| WASH-0662697_00001 | Garanti Bank record of wire transfer from Isanne S.A.R.L. to Biofarma, December 12, 2015 |
| WASH-0742526 | Garanti Bank records, Biofarma account, wire transfer records |
| WASH-0734636 | Garanti Bank records, Baran Korkmaz account, January 2015 through December 2015 |
| WASH-0734613_00002 | Garanti Bank records, Alptekin Yilmaz account |
| WASH-0734613_00005 | Garanti Bank records, Account YY transfer records |
| Records obtained from Luxembourg via MLAT | |
| WASH-LUX-0004995 – WASH-LUX-0004995_00003 | Records from Luxembourg |
| WASH-LUX-001269 – WASH-LUX-001277 | Records from Luxembourg |

**A. Standard for Admissibility**

Federal Rule of Evidence 807, which is commonly referred to as the residual hearsay exception, provides:

> Under the following conditions, a hearsay statement is not excluded by the rule against hearsay even if the statement is not admissible under a hearsay exception in Rule 803 or 804:
>
> (1) the statement is supported by sufficient guarantees of trustworthiness—after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement; and

(2) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts.

Fed. R. Evid. 807(a). The residual hearsay exception "was designed to encourage the progressive growth and development of federal evidentiary law by giving courts the flexibility to deal with new evidentiary situations which may not be pigeon-holed elsewhere." *United States Mathis*, 559 F.2d 294, 299 (5th Cir. 1977). As such, it "does not represent a mere surplusage or useless appendage to the Rules; it has a significant purpose and substantial vitality of its own." *United States v. Am. Tel. & Tel. Co.*, 516 F. Supp. 1237, 1240 (D.C. Cir. 1981). Whether a statement qualifies as an exception to the hearsay rule "is a preliminary question of fact to be decided by the court, which is not bound by the rules of evidence in its fact finding." *United States v. Harrison*, 296 F.3d 994, 1001 (10th Cir. 2002) (citing Fed. R. Evid. 104(a)).

**B. Trustworthiness**

The first requirement under Rule 807 is that the statement "is supported by sufficient guarantees of trustworthiness." Fed. R. Evid. 807(a)(1). Trustworthiness may be proven by evidence that individuals regularly rely upon the accuracy of the documents at issue. *United States v. Bachsian*, 4 F.3d 796, 798 (9th Cir. 1993). Here, the government seeks to introduce two batches of Turkish bank records that each corroborate each other. In addition to matching one another, the records' accuracy will be affirmed by the witness who requested and collected the records. Many of the records are also supported by U.S. bank records that reflect the same transactions.

Courts have found that foreign bank documents are admissible under the residual hearsay exception, even when the proponent of the evidence does not produce a records custodian from the bank. For example, in *United States v. Turner*, 718 F.3d 226, 232-35 (3rd Cir. 2013), the district court admitted foreign bank documents under Rule 807 that had been seized by the IRS from the defendant's co-conspirator's residence. Despite the lack of a custodial witness to authenticate the records, the Third Circuit upheld their admission because the district court properly relied on corroborating evidence in admitting them, including "(1) the appearance of the records, including their internal consistency; (2) the contents of the records; and (3) the circumstances surrounding the discovery of the records." *Id.* at 235. As to their appearance, the court noted that the records "have the official appearance of bank records," "bear the insignia of foreign banks," and "contain the type of transaction data typically present on bank records." *Id.* at 233. As to their contents, the court noted that the government had "reconciled many of the foreign bank documents with domestic bank records." *Id.* at 233.

Similarly, in *United States v. Munoz*, 16 F.3d 1116, 1120 (11th Cir. 1994), the government sought to introduce deposit slips showing substantial deposits into a Panamanian bank account and an application form to obtain checks from that bank. All four documents were seized from aboard a tugboat that the defendants were using to smuggle 18,000 pounds of marijuana. *Id.* at 1118-20. The district court admitted the documents under Rule 804(b)(5), a predecessor of Rule 807, after concluding that the documents "had sufficient indicia of trustworthiness and reliability to permit their introduction into evidence," including that "the documents all bore typical bank

markings and therefore were reliable evidence of banking transactions." *Id.* at 1121-22. *See also United States v. Wilson*, 249 F.3d 366, 376 (5th Cir. 2001) (upholding the admission of Bahamian bank records under Rule 807 where the government traced wire transfers from defendant's business account in New York to the same Bahamian bank), *abrogated on other grounds by Whitfield v. United States*, 543 U.S. 209, 212 (2005); *Karme v. Commissioner*, 673 F.2d 1062, 1064-65 (9th Cir. 1982) (records from a Netherlands Antilles bank provided pursuant to treaty admissible under Rule 803(24), a predecessor of Rule 807, given circumstantial guarantees of trustworthiness even though inadmissible as business records because there was no foundation testimony).

The foreign bank accounts the government seeks to admit under Rule 807 similarly have the indicia of reliability, particularly as these documents are corroborated by corresponding U.S. bank records. Generally, these exhibits will document the foreign side of the transactions listed in Table A of the Superseding Indictment. All the documents "have the official appearance of bank records," "bear the insignia of foreign banks," and "contain the type of transaction data typically present on bank records." *Turner*, 718 F.3d at 233. Furthermore, many of the transactions therein can be reconciled with domestic bank records. *Id.* These records are consistent with other foreign bank records that courts have admitted under Rule 807.

**C. Probative Value**

The Garanti Bank and Ziraat Bank records from both Turkey and the government's witness are more probative to the transactions the government alleges the defendant undertook than any other evidence that the government can obtain through reasonable efforts.

Some of the records pertain to an account held by a Turkish company which received and returned the fraud proceeds described in paragraphs A through G of Table A of the Superseding Indictment. These bank records are corroborated by the U.S. bank statements of Washakie, the sender of the fraud proceeds, and Speedy Lion Investments, the eventual recipients of the fraud proceeds.

The records also show the receipt of funds from Washakie to the Luxembourg account of Isanne SARL, as described in Table A paragraph H and I. These transactions are corroborated by Washakie's bank statements. Of this $56.3 million of fraud proceeds sent to Isanne SARL, the records shows a transfer of $15 million back to the U.S., paragraph L, which is corroborated by the U.S. bank statement of SBK Holding's USA, Inc. Afterwards, the records show that the remaining fraud proceeds sent to Isanne were transferred through numerous international bank accounts. First, $40 million was transferred from Isanne SARL to an account held by Biofarma. Then, $30 million was transferred to account YY. And $10 million was ultimately sent to the accounts of the Defendant's brother in California, which those domestic bank records corroborate.

The records also demonstrate the movement of the fraud proceeds back and forth from account YY to various U.S. accounts. For example, the records show the transfer of funds to Speedy Lion Investments, paragraphs J and K of Table A. They also show the return of the approximately $20 million to the foreign bank from Speedy Lion Investments and then eventual transfer to G.T. Energy's U.S. bank account, paragraphs M through O of Table A. These foreign bank records are therefore corroborated by Speedy Lion Investment's and G.T. Energy's corresponding U.S. bank records.

Finally, the records demonstrate the remaining foreign transfers, paragraphs P through T. In addition to being supported by witness testimony, these foreign bank statements are corroborated by the U.S. bank records of G.T. Energy and SBK Holdings USA showing the incoming and outcoming transactions.

Generally, Rule 807 is used in "exceptional circumstances." See *United States v. Bond*, 608 F.3d 495, 501-02 (9th Cir. 2010). This is one of those exceptional circumstances. As described above, these foreign records will be introduced to prove transactions specifically identified in the Superseding Indictment and are more probative than any reasonable alternative evidence. The government has made reasonable efforts to obtain these foreign records through multiple Mutual Legal Assistance Treaty requests to Turkey and Luxembourg. While the government has obtained those records through official channels, it has not obtained traditional certificates of authenticity. The government has no avenue to compel the testimony of a foreign bank official. However, the government does have a witness who will testify at trial and has firsthand knowledge of the accounts and transactions at issue. The combination of the testimony and the records is the best evidence to prove the material facts underlying the charges. Thus, the evidence meets the standard set forth in Rule 807(1)(2).

## IV. Admission Does Not Violate the Confrontation Clause

Admitting these records under either rule would not offend the Confrontation Clause. The United States Constitution forbids the admission of out-of-court statements that are deemed "testimonial." *Crawford v. Washington*, 541 U.S. 36, 56 (2004); U.S. Const. amend. VI. Statements are testimonial when their "primary purpose" is "to

establish or prove past events potentially relevant to later criminal prosecution" and "when written statements are functionally identical to live, in-court testimony, made for the purpose of establishing or proving some fact at trial." *Lucero v. Holland*, 902 F.3d 979, 989 (9th Cir. 2018) (citing *Melendez-Diaz v. Massachussetts*, 557 U.S. 305, 310-11 (2009) and *Davis v. Washington*, 547 U.S. 813, 822 (2006)) (internal quotations omitted).

That is not the case here. The records at issue are bank records that were created over the course of many years through automated processes at financial institutions. The "primary purpose" of transactional records kept by banks is not for use at trial, but rather to preserve historical information for banks and their account holders. A business or public record is not "testimonial" due to 'the mere possibility' that it could be used in a later criminal prosecution; rather, it must be made in anticipation of litigation. *United States v. Orozco-Acosta*, 607 F.3d 1156, 1164 (9th Cir. 2010). The Ninth Circuit has held that the admission of foreign bank records without the testimony of a custodian does not violate the Confrontation Clause. *United States v. Hagege*, 437 F.3d 943, 958 (9th Cir. 2006); *United States v. Miller*, 830 F.2d 1073, 1077 (9th Cir. 1987)[1]. Because the foreign bank records do not violate the Confrontation Clause, they should be admitted.

---

[1] The government notes for the Court's awareness that the records at issue in these cases were admitted under 18 U.S.C. § 3505, not under Federal Rule of Evidence 807.

## II. CONCLUSION

The government provides this notice of intent to offer foreign records pursuant to Federal Rule of Evidence 807 and 18 U.S.C. § 3505.

Respectfully submitted this 29th of October, 2026.

COLIN M. MCDONALD
Assistant Attorney General
National Fraud Enforcement Division

*<u>/s/ Megan L. Jones</u>*
RICHARD M. ROLWING
Senior Litigation Counsel
MEGAN L. JONES
Trial Attorney

Certificate of Service

I certify that on the 29th of October, 2026, I caused a copy of the foregoing to be filed through the CM/ECF electronic filing system, thereby providing notice to all parties of record in this case.

*/s/ Megan L. Jones*
Megan L. Jones
Trial Attorney