Ariel A. Neuman - State Bar No. 241594
aneuman@birdmarella.com
William E. Johnston - State Bar No. 287707
wjohnston@birdmarella.com
Alexander H. Tran - State Bar No. 338940
atran@birdmarella.com
BIRD, MARELLA, RHOW,
LINCENBERG, DROOKS & NESSIM, LLP
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Defendant Grigor Termendjian

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

UNITED STATES OF AMERICA,

Plaintiff,

vs.

GRIGOR TERMENDJIAN,

Defendant.

CASE NO. 2:23-CR-00453-JLS

**DEFENDANT GRIGOR TERMENDJIAN'S NOTICE OF MOTION AND MOTION IN LIMINE TO EXCLUDE TRANSACTION-SPECIFIC AND STATE-OF-MIND EXPERT OPINION TESTIMONY OF IRS-CI SPECIAL AGENT JAMES CARFORA**

*[Filed Concurrently with Declaration of William E. Johnston and [Proposed] Order]*

Date: December 17, 2026
Time: 1:30 pm
Crtrm.: 8A

Hearing Estimate: 15 minutes

Assigned to Hon. Josephine L. Staton

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on December 17, 2026, at 1:30 P.M., or as soon thereafter as this matter may be heard in the above-entitled court, before the Honorable Josephine L. Staton, United States District Judge for the Central District of California, located at 350 W. 1st Street, Los Angeles, CA 90012, in Courtroom 8A, Defendant Grigor Termendjian ("Termendjian") will, and hereby does, move *in limine*, for an order precluding Special Agent James Carfora from (1) offering any opinion that a specific transaction, document, account, or tax return in this case was, or "could have the effect of," concealing or disguising the proceeds of unlawful activity, or was a "false characterization," lacked a business purpose, or constituted a monetary transaction in criminally derived property; and (2) offering any opinion about the knowledge, intent, purpose, or state of mind of Mr. Termendjian or of any other person, including Jacob Kingston, Levon Termendzhyan, and Sezgin Baran Korkmaz.

Mr. Termendjian does not ask the Court to bar Special Agent Carfora from explaining, in general terms, how laundering is accomplished—including, if stated generally, that commingling or layering funds can make them harder to trace. The government's October 16 expert disclosure identifies certain types of general transactions and how they fit into a money laundering scheme. Johnston Decl., Ex. E at 4–10. What Mr. Termendjian asks the Court to prohibit is the application of those concepts to the specific transactions, documents, and people in this case, which the government's disclosure proposes.

The motion is made under Federal Rules of Evidence 104(a), 403, 702, and 704 and Federal Rule of Criminal Procedure 16(a)(1)(G).

This motion is based on this Notice, the attached Memorandum of Points and Authorities, the supporting Declaration of William E. Johnston, all pleadings and record on file in this action, and such other evidence and argument as may be presented to the Court.

Pursuant to the Court's Order re Criminal Proceedings, counsel met and conferred regarding the substance of this motion on October 20, 2026. The parties were not able to agree on a resolution of the matters raised in this motion.

DATED: October 29, 2026

Ariel A. Neuman
William E. Johnston
Alexander H. Tran
Bird, Marella, Rhow,
Lincenberg, Drooks & Nessim, LLP

By: *\/s\/ William E. Johnston*
William E. Johnston
Attorneys for Defendant Grigor Termendjian

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION .......... 1

II. BACKGROUND .......... 2

A. The Charges .......... 2

B. The History of the Government's Expert Disclosures .......... 3

III. LEGAL STANDARD .......... 5

IV. ARGUMENT .......... 6

A. Intent Testimony about Alleged Concealment Money Laundering Transactions Is Prohibited under FRE 702 and 704(b). .......... 6

B. Relabeling the Opinions as "Effect" Testimony Does Not Change Their Substance .......... 9

C. SA Carfora Should Not Be Permitted to Testify that any Funds Are Proceeds of Unlawful Activity .......... 11

D. Rule 403 Independently Requires Exclusion. .......... 11

E. The Tax-Return Opinions Exceed SA Carfora's Disclosed Expertise, and Otherwise Would Be Cumulative. .......... 12

V. CONCLUSION .......... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Camenisch v. Umpqua Bank*,
763 F. Supp. 3d 871 (N.D. Cal. 2025) .......... 6

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993) .......... 5

*Hunton v. Am. Zurich Ins. Co.*,
No. CV-16-00539-PHX-DLR, 2018 WL 1182550 (D. Ariz. Mar. 7, 2018) .......... 6

*Kumho Tire Co. v. Carmichael*,
526 U.S. 137 (1999) .......... 5

*Rogers v. Raymark Indus., Inc.*,
922 F.2d 1426 (9th Cir. 1991) .......... 11

*Siring v. Oregon State Bd. of Higher Educ. ex rel. E. Oregon Univ.*,
927 F. Supp. 2d 1069 (D. Or. 2013) .......... 6

*Takahashi v. United States*,
143 F.2d 118 (9th Cir. 1944) .......... 7

*United States v. Alo-Kaonohi*,
635 F. Supp. 3d 1074 (D. Haw. 2022) .......... 7

*United States v. C'est Toi Jeans, Inc. et al.*,
No. 2:20-cr-00222-MCS, ECF No. 167 (C.D. Cal. Sept. 6, 2024) .......... 8, 10

*United States v. Campos*,
217 F.3d 707 (9th Cir. 2000) .......... 6

*United States v. Diaz*,
876 F.3d 1194 (9th Cir. 2017) .......... 6

*United States v. Frazier*,
387 F.3d 1244 (11th Cir. 2004) .......... 10

*United States v. Lukashov*,
694 F.3d 1107 (9th Cir. 2012) .......... 7

*United States v. Reulet*,
No. 14-40005-DDC, 2015 WL 7776876 (D. Kan. Dec. 2, 2015) ...................... 11

*United States v. Savani*,
No. CR 23-16, 2026 WL 74610 (E.D. Pa. Jan. 9, 2026) ...................... 7, 8, 10, 11

*United States v. Valencia-Lopez*,
971 F.3d 891 (9th Cir. 2020) ...................... 5

*United States v. Warshak*,
631 F.3d 266 (6th Cir. 2010) ...................... 7, 8, 9

*United States v. Wheat*,
No. 1:17-CR-0229-AT, 2025 WL 2630925 (N.D. Ga. Sept. 12, 2025) ...................... 7

**Statutes**

18 U.S.C. § 371 ...................... 2

18 U.S.C. § 1956(a)(1)(B)(i) ...................... 1

18 U.S.C. § 1956(h) ...................... 2

18 U.S.C. § 1957 ...................... 2, 11

**Other Authorities**

Federal Rule of Criminal Procedure 16 ...................... 3

Federal Rule of Evidence 403 ...................... 11

Federal Rule of Evidence 702 ...................... 2, 5, 6, 7, 10, 11

Federal Rule of Evidence 704 ...................... 2, 6, 7, 8, 11

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Concealment money laundering is a specific intent crime. Transferring money, buying a cashier's check, and lending money between affiliated companies are all lawful and commonplace. What makes any of these acts a violation of 18 U.S.C. § 1956(a)(1)(B)(i) is that the transaction was "designed in whole or in part to conceal or disguise" the proceeds of unlawful activity, and that the defendant knew it.

The government intends for its money laundering expert, IRS Special Agent ("SA") James Carfora, to usurp the jury's role and answer those questions on its behalf. In its original expert disclosure, made on September 23, 2026, and in a supplemental disclosure made on October 7, 2026, the government stated that SA Carfora would testify that a laundry list of specific transactions identified in the disclosures—many of them alleged in the Superseding Indictment—"were indicative of concealment money laundering" and contained "proceeds of specified unlawful activity." Declaration of William Johnston ISO Motion In Limine to Exclude Opinion Testimony of SA Carfora ("Johnston Decl."), Exs. A and C. These are arguments and state-of-mind opinions dressed up as expert testimony.

After Mr. Termendjian objected that these were impermissible state-of-mind opinions, the government served a third notice on October 16, 2026. That notice simply replaces the reference to transactions that "were indicative of concealment money laundering" with the statement that they "could have the effect of concealing and disguising the proceeds of unlawful activity." *Id.*, Ex. E at 10. The change is in the heading, not the substance.

SA Carfora's anticipated testimony is still argument masquerading as expertise, urging the jury to find that Mr. Termendjian and his alleged co-conspirators possessed the specific intent to "conceal or disguise" proceeds through various financial transactions. These are opinions about what people were thinking, or about whether the charged elements are met. Because they concern Mr. Termendjian's state

of mind, Rule 704 bars them. To the extent they concern anyone else's state of mind, they fail Rule 702. And Rule 403 independently requires the exclusion of SA Carfora's transaction-specific opinions.

The government's proposed expert testimony also contains the impermissible legal conclusion that the money involved was, in fact, proceeds of specified unlawful activity. Whether the funds constituted criminal proceeds is a question for the jury, not the government's expert. SA Carfora should be therefore be precluded from assuming in his testimony that any underlying crime has occurred.

Finally, SA Carfora's tax return testimony is beyond the scope of his disclosed expertise, and needlessly cumulative of expert testimony from Revenue Agent Jeffrey Marino.

## II. BACKGROUND

### A. The Charges

The Superseding Indictment charges a conspiracy to defraud the IRS (Count One, 18 U.S.C. § 371); a money laundering conspiracy with concealment and § 1957 objects (Count Two, 18 U.S.C. § 1956(h)); and four counts of concealment laundering based on bank checks purchased from a Century Energy account on March 23, 2020, payable to Vernon Truck Wash, LLC, Petrolion, Inc., Speedy Fuel Distribution, Inc., and International Pita Bread, Inc. (Counts Three through Six). Dkt. 85 ¶¶ 17, 22, 25. Count Two and Counts Three through Six each require proof that Mr. Termendjian acted "knowing that the transactions were designed in whole or in part to conceal and disguise" the proceeds. *Id.* ¶¶ 22(a), 25.

The predicate "Washakie Fraud Scheme" is alleged to have been committed by Jacob Kingston and Levon Termendzhyan. *Id.* ¶ 10. The Superseding Indictment alleges that Termendzhyan and Korkmaz directed fraud proceeds through accounts in Turkey and Luxembourg and returned a portion to entities in the United States, including Speedy Lion, a business controlled by Mr. Termendjian. *Id.* ¶¶ 11-16. Importantly, the indictment attributes several of the allegedly false characterizing

documents to others: a document characterizing the Washakie-to-Komak wires as an investment, caused to be created by Mr. Termendjian's "co-conspirators" (Overt Act 40); the "additional protocol to the partnership agreement," signed by Kingston (Overt Act 53); a promissory note concerning the Isanne transfers, caused to be created by Korkmaz (Overt Act 57); and a loan agreement Korkmaz caused to be produced to federal agents (Overt Act 67).

### B. The History of the Government's Expert Disclosures

In its September 23, 2026 disclosure, the government introduced SA Carfora as providing "expert witness testimony regarding money laundering." Johnston Decl., Ex. A at 2. The government disclosed that SA Carfora would testify not just about the general framework for money laundering—i.e., the basic steps of placement, layering, and integration—but also that the transactions at issue in this case and identified in the Superseding Indictment "were ***indicative of concealment money laundering***," which is precisely what the jury is tasked with determining. *Id.* at 4-5 (emphasis added).

In a September 28, 2026 letter to the government, Mr. Termendjian identified the notice's deficiencies under Federal Rule of Criminal Procedure 16. Johnston Decl., Ex. B. Mr. Termendjian requested more detail about SA Carfora's proposed testimony. On October 7, 2026, the government responded with a supplemental notice expanding the transaction-specific opinions: SA Carfora "will testify that Defendant, and his co-conspirators, layered, commingled, and otherwise disguised the proceeds of the Washakie Fraud Scheme to conceal the source of the funds," and "the following actions, along with others, were ***indicative of concealment money laundering***." *Id.*, Ex. C, at 5 (emphasis added). The list that followed included thirteen "false characterization[s]" of funds, the use of accounts "without any business purpose," "[t]he concealment of the funds through the purchase of cashier's checks," a home purchase "set up to appear as if the funds were from a lender," commingling "for the purposes of concealing and disguising," and "the commingling and

mischaracterization of transactions between Defendant's businesses as loans or investments or repayments thereof, including the four transactions listed as Counts 3 through 6." *Id.* at 5–9.

On October 13, 2026, Mr. Termendjian advised the government that the October 7, 2026 opinions about specific transactions were impermissible opinions on the mental state of Mr. Termendjian and others. *Id.*, Ex. D. Three days later, on October 16, 2026, the government served a third notice, again certified by Special Agent Carfora. *Id.*, Ex. E. It made two sets of changes.

*First*, the government added seventeen numbered opinions, items (13) through (29), each stating that a category of conduct "can" or "could" "have the effect of concealing and disguising the proceeds." *Id.* at 7–10. Several opinions are described generally. Others describe the conduct in this case, including "returning the commingled funds to the unrelated businesses in amounts not consistent with the deposits" (item 24) and "the transfer of funds from accounts under the control of the defendant to his brother" (item 29). *Id.* at 9–10. Item 17 states that not using funds for business purposes "could show that the funds were not business related." *Id.* at 8. Item 21 states that withdrawing the proceeds as cashier's checks "can constitute a monetary transaction involving property derived from a specified unlawful activity." *Id.*

*Second*, the government changed its characterization of the transactions. Where the October 7 notice described the listed actions as "indicative of concealment money laundering," the October 16 notice says "the following actions of the Defendant and his co-conspirators, along with others, could have the effect of concealing and disguising the proceeds of unlawful activity." *Compare id.*, Ex. C at 5, *with id.*, Ex. E at 10. The October 16 notice omits the sentence that "Defendant, and his co-conspirators, . . . disguised the proceeds . . . to conceal the source of the funds," and its Counts Three through Six bullet no longer uses the word "mischaracterization." *Id.*, Ex. E at 13.

Otherwise, the list itself is largely unchanged—and in places expanded. The disclosure still describes "[t]he false characterization of the funds in documents" (with the same twelve sub-items), "[t]he concealment of the funds through the purchase of cashier's checks," "[t]he concealment of the proceeds by holding fraud proceeds outside of the banking system," "[t]he purchase of the luxury seaside home set up to appear as if the funds were from a lender," and "[t]he co-mingling of funds . . . for the purposes of concealing and disguising the nature and source of subsequent expenditures." *Id.* at 10–13. It now explains why non-interest-bearing accounts were used "since any interest earned would be reported by the banks to the government, and thus reveal that a significant amount of proceeds was sitting in a business bank account," and "without any business purpose." *Id.* at 12. And it adds "[t]he lack of business use (or any use) of the proceeds . . . for inordinate lengths of time," "[t]he lack of business records concerning high-dollar transactions," and three new sub-items concerning the home, including "[t]he non-repayment of the so-called 'loan.'" *Id.* at 12–13.

## III. LEGAL STANDARD

Federal Rule of Evidence 702 permits expert opinion only if the proponent demonstrates that the expert's specialized knowledge "will help the trier of fact," the testimony rests on sufficient facts or data, it is "the product of reliable principles and methods," and the opinion reflects a reliable application of those methods to the facts. Fed. R. Evid. 702. The court must perform its gatekeeping function for all expert testimony. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 & 597 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-49 (1999); *United States v. Valencia-Lopez*, 971 F.3d 891, 901–02 (9th Cir. 2020). An expert who relies on experience "must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Fed. R. Evid. 702 advisory committee's note to 2000 amendment.

Expert opinions that touch on another's state of mind are routinely excluded under FRE 702, as "[t]he jury is sufficiently capable of drawing its own inferences regarding intent, motive, or state of mind from the evidence, and permitting expert testimony on this subject would be merely substituting the expert's judgment for the jury's and would not be helpful to the jury." *Siring v. Oregon State Bd. of Higher Educ. ex rel. E. Oregon Univ.*, 927 F. Supp. 2d 1069, 1077 (D. Or. 2013); *see also Hunton v. Am. Zurich Ins. Co.*, No. CV-16-00539-PHX-DLR, 2018 WL 1182550, at *2 (D. Ariz. Mar. 7, 2018); *Camenisch v. Umpqua Bank*, 763 F. Supp. 3d 871, 882 (N.D. Cal. 2025).

Furthermore, Federal Rule of Evidence 704(b) provides that, "[i]n a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense." That prohibition applies not only to direct testimony about mental-state elements but testimony that "compels the conclusion that [the defendant] did not possess the requisite knowledge." *United States v. Campos*, 217 F.3d 707, 709 (9th Cir. 2000).

Finally, the Ninth Circuit "has repeatedly affirmed that 'an expert witness cannot give an opinion as to her *legal conclusion*, i.e., an opinion on an ultimate issue of law.'" *United States v. Diaz*, 876 F.3d 1194, 1197 (9th Cir. 2017) (citing *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004)).

# IV. ARGUMENT

## A. Intent Testimony about Alleged Concealment Money Laundering Transactions Is Prohibited under FRE 702 and 704(b).

Concealment money laundering has three elements, two of which relate to knowledge and intent: "(1) the defendant conducted a financial transaction involving some form of unlawful activity; (2) the defendant *knew* that the property represented the proceeds of some form of unlawful activity; (3) the defendant *knew* that the transaction *was designed* in whole or in part to *conceal or disguise* the nature,

location, source, ownership or control of the proceeds." Ninth Cir. Crim. Jury Instr. 18.4 (2022) (emphasis added).

The line separating a lawful transaction from a criminal laundering transaction is knowledge and purpose. The government acknowledges as much. It claims that SA Carfora should be able to testify whether a transaction "appears to have a legitimate business purpose" and whether it is "honestly characterized." Johnston Decl., Ex. E at 4. Each category on the government's list—cashier's checks, intercompany transfers, deposits into accounts with existing balances, entries on tax returns, loans between affiliated entities—has an ordinary, lawful counterpart that looks the same on a bank statement.

Yet "[q]uestions of knowledge and intent are always questions of fact for the jury." *Takahashi v. United States*, 143 F.2d 118, 122 (9th Cir. 1944). "Expert testimony should be excluded if it concerns a subject improper for expert testimony, for example, one that invades the province of the jury." *United States v. Lukashov*, 694 F.3d 1107, 1116 (9th Cir. 2012) (internal quotation marks omitted). An expert who "is not an expert in reading Defendant's mind . . . cannot reliably testify as to Defendant's mental state, i.e., his subjective intent." *United States v. Alo-Kaonohi*, 635 F. Supp. 3d 1074, 1081 (D. Haw. 2022).

Guided by such principles, and FRE 702 and 704(b), courts have routinely excluded or struck expert testimony about a defendant having committed money laundering or that certain transactions were "indicative" of money laundering. *See, e.g.*, *United States v. Wheat*, No. 1:17-CR-0229-AT, 2025 WL 2630925, at *15 (N.D. Ga. Sept. 12, 2025); *United States v. Warshak*, 631 F.3d 266, 324 (6th Cir. 2010); *United States v. Savani*, No. CR 23-16, 2026 WL 74610, at *3 (E.D. Pa. Jan. 9, 2026). Testimony that transactions were "indicative" of money laundering necessarily contains the impermissible opinion that the defendant knew a transaction was designed to conceal unlawful proceeds.

In *Warshak*, the government's witness testified that certain transactions "were designed to conceal" and were undertaken "with an intent to conceal." 631 F.3d. at 324. The Sixth Circuit held that the testimony "clearly ran afoul of Rule 704(b)": "To say that a transaction is designed to achieve a certain effect is tantamount to declaring that the individual who conducted the transaction intended to achieve that outcome." *Id.* (citing *United States v. Willey*, 57 F.3d 1374, 1389 n.29 (5th Cir. 1995)).

Similarly, in *Savani*, the government wanted to offer expert testimony about whether "evidence presented against the Defendants in this case is consistent with money laundering." 2026 WL 74610, at *3. The court reasoned, "Opinions on whether specific conduct of the Defendants is consistent with money laundering necessarily assume the commission of predicate offenses and imply opinions on the mental states or intentions of the Defendants in violation of Rule 704(b)." *Id.*

Judge Otis Wright recently came to a similar conclusion in a money laundering case in this District. There, the government intended to have its agent qualified as an expert to testify whether certain financial transactions were "intended to further the objects of the conspiracy" or were "intended to conceal" the source of certain funds. *United States v. C'est Toi Jeans, Inc. et al.*, No. 2:20-cr-00222-MCS, ECF No. 163, at 7 (C.D. Cal. Sept. 6, 2024). The defense objected that such testimony "encroaches on the ultimate issue that is reserved for the jury." *Id.* Judge Wright agreed and held that, "[t]o the extent Agent Reyna intends to opine on the state of mind of any other person but himself, Defendants' objection is well taken. He will not be permitted to offer an opinion on the state of mind of any other person, most especially any defendant." *See id.*, ECF No. 167, at 3 (Sept. 9, 2024).

Here, the government should not be able to offer any similar testimony that directly or indirectly comments on the state of mind of the Defendant or his alleged co-conspirators.

### B. Relabeling the Opinions as "Effect" Testimony Does Not Change Their Substance.

After Mr. Termendjian cited many of the above authorities to the government, the government attempted to relabel their mental state opinions as "effect" testimony, presumably in reliance on *Warshak*'s observation that "a witness may permissibly testify that the effect of a transaction is to conceal." 631 F.3d at 324. Mr. Termendjian does not dispute that an expert may, in an appropriate case, explain that certain kinds of conduct can make funds harder to trace. But this is not that case. Recasting these opinions in terms of the transactions' "effect" does not cure the problem because they remain opinions about purpose, truthfulness, and ultimately whether the elements of money laundering and conspiracy are satisfied.

The October 16 disclosure changes only the verb that introduces the list of transactions. The list itself still asserts that the funds were falsely characterized, that cashier's checks were used for "concealment," that a home purchase was "set up to appear" to be financed by a lender, that accounts were used "without any business purpose," and that commingling occurred "for the purposes of concealing and disguising." Johnston Decl., Ex. E at 10–13. None of those is a statement about effect. Each describes why the defendant or one of his alleged co-conspirators acted in a particular way, and necessarily contains a prohibited opinion about their intent when engaging in a certain financial transaction. A new heading does not convert these objectionable opinions into admissible ones.

An example bears this out. The government intends to have SA Carfora testify that "falsely characterizing" money Mr. Termendjian received from Levon Termendzhyan as a "loan," which "he later repaid through various means," can have the "effect of concealing and disguising the proceeds of unlawful activity." *Id.* at 10-12. Yet a genuine loan conceals nothing. A characterization can have a concealing effect only if it is not accurate. Every opinion that a specific characterization in this case had the effect of concealing necessarily rests on the antecedent opinion that the

characterization was false, and whether these were genuine loans and investments is a disputed question of fact that turns on what the parties to them intended and understood. SA Carfora cannot reach "effect" without first deciding and opining on the mental states of Mr. Termendjian and Mr. Termendzhyan, which is prohibited by FRE 704(b) and 702, respectively.

The government has tried this substitution before in this District. In *C'est Toi Jeans*, its IRS-CI agent was disclosed to opine that a scheme "was intended to conceal." *Id.*, Ex. F (*C'est Toi Jeans*, Dkt. 163) at 9. In response to the defense motion, the government offered to avoid "[t]he offending words, 'knowingly' and 'intended,'" so that the agent could testify instead "as to whether, in their experience, and with the benefit of their training, the schemes described would be . . . concealment money laundering." *Id.*, Ex. G (Dkt. 165) at 9. The court did not accept the rephrasing. It barred the agent from offering an opinion on the state of mind of any person and held that "[i]nferences to be drawn from those facts fall within the exclusive province of the jury." *Id.*, Ex. H (Dkt. 167) at 3.

Here, the government's list of transactions that supposedly had the "effect" of concealing proceeds is no more than its closing argument to the jury dressed up as opinion. *See United States v. Frazier*, 387 F.3d 1244, 1262–63 (11th Cir. 2004) ("Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments."). SA Carfora is assuming the facts the jury must find—that the transactions at issue were done with a dishonest or deceptive purpose—and then opining that such deceptive transactions had the *effect* of concealing the source or ownership of the proceeds. "[S]uch testimony would improperly usurp the role of the jury and essentially serve as a summary of the government's theory of the case." *Savani*, 2026 WL 74610, at *3. SA Carfora should not be allowed to testify about the "effect" of any specific transactions at issue or characterize any such transaction; to do so necessarily contains a conclusion about someone else's state of mind.

**C. SA Carfora Should Not Be Permitted to Testify that any Funds Are Proceeds of Unlawful Activity.**

Another element of money laundering is the funds at issue must be derived from unlawful activity. Ninth Cir. Crim. Jury Instr. 18.4 (2022). The government intends to have SA Carfora testify that various transactions contain the "proceeds of specified unlawful activity." *Id.*, Ex. E at 6-7. That is an impermissible legal conclusion. It is for the jury to decide whether a crime has been committed and whether the funds at issue are derived from that crime.

Multiple courts have drawn this line. In *United States v. Reulet*, No. 14-40005-DDC, 2015 WL 7776876 (D. Kan. Dec. 2, 2015), the court concluded, "Because the jury must first determine if a criminal offense was committed before determining guilt under 18 U.S.C. § 1957, testimony about 'criminally derived property' in a way usurps the jury's role by telling the jury what legal conclusion to reach." *Id.* at *7. Similarly, the court in *Savani* prohibited testimony about money laundering transactions that necessarily "assume the commission of predicate offenses." 2026 WL 74610, at *3.

In light of these authorities, SA Carfora must use neutral, non-conclusory language when testifying about the funds at issue, such as by referring to them as "Washakie funds." He cannot assume legal issues that are for the jury to decide.

**D. Rule 403 Independently Requires Exclusion.**

Even if SA Carfora's transaction-specific testimony did not run afoul of Rule 702 and 704(b), Rule 403 would require its exclusion. Testimony about whether a particular transaction had the *effect* of concealing the location or source of unlawful proceeds runs the risk of the jury abnegating its role as the trier of fact, rather than deciding for itself what Mr. Termendjian and others intended. *See Rogers v. Raymark Indus., Inc.*, 922 F.2d 1426, 1431 (9th Cir. 1991) ("Jurors may well assume that an expert, unlike an ordinary mortal, will offer an authoritative view on the issues addressed; if what an expert has to say is instead tangential to the real issues, the jury

may follow the 'expert' down the garden path and thus focus unduly on the expert's issues to the detriment of issues that are in fact controlling.").

The probative value of such transaction-specific testimony is minimal: the jurors will have access to Mr. Termendjian's own bank records and tax returns, and can draw for themselves any appropriate inferences of his intent. The government should not be able to attach to each item a label pointing toward the crime charged. Rule 403 requires the exclusion of such testimony.

### E. The Tax-Return Opinions Exceed SA Carfora's Disclosed Expertise, and Otherwise Would Be Cumulative.

Initially, the government's September 23 disclosure described SA Carfora as an expert in "money laundering, taxation, and forensic accounting." Johnston Decl., Ex. A at 2. The October 7 and October 16 disclosures dropped his alleged taxation and forensic accounting expertise. *Id.*, Ex. C at 2; Ex. E at 2. Yet the October 16 notice still proposes that he opine on "the filing of tax returns reporting events inconsistent with the actual handling of the proceeds," now expanded to include Gilbert Island Property's returns, and that "not accurately reporting the transactions on tax returns" can conceal proceeds. *Id.* Ex. E at 8, 13. The government has separately noticed Revenue Agent Marino to testify to the accuracy of those same returns. *Id.* at 15–19. SA Carfora's tax-return opinions are outside his disclosed expertise and cumulative, and should therefore be excluded.

## V. CONCLUSION

The Court should grant the Motion and enter the accompanying Proposed Order.

DATED: October 29, 2026

Ariel A. Neuman
William E. Johnston
Alexander H. Tran
Bird, Marella, Rhow,
Lincenberg, Drooks & Nessim, LLP

By: */s/ William E. Johnston*
William E. Johnston
Attorneys for Defendant Grigor Termendjian

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Grigor Termendjian, certifies that this brief contains 3896 words, which complies with the word limit of L.R. 11-6.1.

DATED: October 29, 2026

*/s/ William E. Johnston*

William E. Johnston

**DECLARATION OF WILLIAM E. JOHNSTON**

I, William E. Johnston, declare as follows:

1. I am an attorney duly licensed to practice law before this Court and a Partner at Bird, Marella, Rhow, Lincenberg, Drooks & Nessim, LLP, counsel of record for Defendant Grigor Termendjian in the above-captioned action. I submit this declaration pursuant to the Court's Order re: Criminal Proceedings, revised May 29, 2026, regarding the use of generative artificial intelligence. I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto.

2. In the course of preparing Defendant Grigor Termendjian's Notice of Motion and Motion In Limine To Exclude Transaction-Specific and State-of-Mind Expert Opinion Testimony of IRS-CI Special Agent James Carfora, a generative artificial intelligence tool was used to assist with research, drafting and editing. The generative artificial intelligence tool used was Microsoft CoPilot .

3. I certify that I or attorneys under my supervision have reviewed the source material underlying the portions of the motion prepared with the assistance of generative artificial intelligence, including the legal authorities and factual assertions contained therein. I or attorneys under my supervision have independently verified that the artificially generated content is accurate, that each legal authority cited exists and supports the proposition for which it is cited, and that the factual representations are supported by the record.

//

//

//

//

//

//

//

4. I further certify that the motion complies with my obligations under Federal Rule of Civil Procedure 11, and that I have made a reasonable inquiry into the legal and factual contentions set forth in the motion.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 29, 2026, at Los Angeles, California.

*/s/ William E. Johnston*
William E. Johnston