Ariel A. Neuman - State Bar No. 241594
aneuman@birdmarella.com
William E. Johnston - State Bar No. 287707
wjohnston@birdmarella.com
Alexander H. Tran - State Bar No. 338940
atran@birdmarella.com
BIRD, MARELLA, RHOW,
LINCENBERG, DROOKS & NESSIM, LLP
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Defendant Grigor Termendjian

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

UNITED STATES OF AMERICA,

Plaintiff,

vs.

GRIGOR TERMENDJIAN,

Defendant.

CASE NO. 2:23-CR-00453-JLS

**DEFENDANT GRIGOR TERMENDJIAN'S NOTICE OF MOTION AND MOTION IN LIMINE TO PRECLUDE IMPROPER SUMMARY-WITNESS TESTIMONY OF IRS-CI SPECIAL AGENTS JAMES CARFORA AND STEPHEN WASHBURN**

*[Filed Concurrently with Declaration of William E. Johnston and [Proposed] Order]*

Date: December 17, 2026
Time: 1:30 pm
Crtrm.: 8A

Hearing Estimate: 10 minutes

Assigned to Hon. Josephine L. Staton

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on December 17, 2026 at 1:30 P.M., or as soon thereafter as this matter may be heard in the above-entitled court, before the Honorable Josephine L. Staton, United States District Judge for the Central District of California, located at 350 W. 1st Street, Los Angeles, CA 90012, in Courtroom 8A, Defendant Grigor Termendjian ("Termendjian") will, and hereby does, move *in limine*, pursuant to Federal Rules of Evidence 401, 402, and 403, for an order precluding the government from offering, through any witness, a summary of the testimony of other witnesses, and precluding any testimony not based on the personal knowledge of the government agent.

The motion is made under Federal Rules of Evidence 104(a), 107, 403, 602, 611(a), 701–703, 802, and 1006.

This motion is based on this Notice, the attached Memorandum of Points and Authorities, the supporting Declaration of William E. Johnston, all pleadings and records on file in this action, and such other evidence and argument as may be presented to the Court.

Pursuant to the Court's Order re Criminal Proceedings, counsel met and conferred regarding the substance of this motion on October 20, 2026. The parties were not able to agree on a resolution of the matters raised in this motion.

DATED: October 29, 2026

Ariel A. Neuman
William E. Johnston
Alexander H. Tran
Bird, Marella, Rhow,
Lincenberg, Drooks & Nessim, LLP

By: */s/ William E. Johnston*
William E. Johnston
Attorneys for Defendant Grigor Termendjian

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The government intends to introduce summary testimony through two IRS agents, one of whom is also being offered as an expert. According to the government, Special Agent ("SA") Washburn will testify first as a fact witness and then return at the close of the government's case to "summarize" the trial. Summary testimony may be appropriate in the right case, particularly one involving voluminous records. But its dangers are manifold. Without rigorous policing, a summary witness may testify based on hearsay and speculation, improperly vouch for other witnesses, and offer a narrative that is a thin disguise for closing argument.

Those dangers are particularly acute in a circumstantial case like this one. The government will try to stitch together ordinary business transactions and speculative testimony from cooperators to convict Mr. Termendjian of conspiracy to defraud the IRS, conspiracy to commit money laundering, and concealment money laundering.

The dangers are compounded where, as here, both summary witnesses wear more than one hat. Special Agent ("SA") Carfora is the government's money laundering expert and he will also provide summary testimony. Lay summary testimony from an agent who also testifies as an expert or percipient witness can smuggle in hearsay. It can also leave the jury unable to tell which parts of the testimony are evidence, which are expert opinion, and which are the government's argument.

The Court should require the government to establish a foundation for each summary outside the jury's presence. It should bar the government from using an agent to summarize what other witnesses said, and thereby prevent SA Washburn from testifying twice, as the government currently proposes.

## II. FACTUAL BACKGROUND

### A. SA Carfora's Proposed Summary Testimony

The government has noticed SA Carfora as an expert in money laundering. Ex.

A at 2. His expert opinions are the subject of a separate motion in limine. The notice states that, in addition to his opinions, SA Carfora "will likely present summary exhibits illustrating the flow of funds through numerous bank accounts and entities and the tracing of proceeds of the Washakie Fraud Scheme." Ex. A at 13. His testimony "will rely upon evidence introduced at trial and records admitted pursuant to Federal Rule of Evidence 902(11)." *Id.* at 13–14.

According to the notice, his testimony will be based on his "review of bank and financial records, and the tracing analysis conducted by IRS-CI." *Id.* at 3. It does not say that SA Carfora performed that tracing. The government has served the defense with no draft summaries, which are not due until January 12, 2027. It has committed only to providing "final summaries in advance of Special Agent Carfora's testimony." *Id.* at 14.

### B. SA Washburn's Proposed Summary Testimony

The same notice offers SA Washburn "to provide summary witness testimony." It states that the government does not consider his testimony to be expert testimony and that he "will not be providing opinion testimony." Ex. A at 20–21. The notice also discloses that SA Washburn "played a significant role in tracing the fraud proceeds through more than 50 bank accounts." *Id.* at 20. According to the notice, SA Washburn will testify about and introduce (1) "the timing of material events in the Kingston/Termendzhyan investigation, including arrests, search warrants, indictments, pre-trial and trial events, as well as events from separate but related investigations," along with timelines summarizing them; (2) "records uncovered during the search warrant of the Kingstons"; (3) "summaries of the individual income tax returns" of Mr. Termendjian and his brother; and (4) "summaries of timelines of key events relevant to the case as well as timelines of key transactions described in the superseding indictment." *Id.* at 20–21.

### C. Meet and Confer

On October 13, 2026, defense counsel wrote to the government. Counsel stated

the defense's position that, absent another evidentiary basis, SA Washburn's testimony should be limited to his personal observations. Counsel added that SA Washburn may not "summarize investigative work conducted by others, or otherwise provide a narrative of the investigation that effectively presents the government's theory of the case." Ex. B at 3.

The government's response described a two-stage plan. SA Washburn "will be called initially as a fact witness" to testify to his "personal knowledge relevant to the investigation and trial of the Utah case." *Id.* He will also testify about statements Mr. Termendjian allegedly made in a petition filed in Utah. *Id.* He "also will be called to testify as a summary witness in this case at the end of the government's case-in-chief." In that role, he will "introduce and testify about timelines that summarize the evidence introduced at trial relating to the proceeds and transactions at issue, and the events surrounding those transactions." *Id.* According to the government, those timelines "will include his personal knowledge of the criminal proceedings and allegations involving Lev Dermen and Jacob Kingston," "his personal observation of your client at many of these proceedings," and "the dates of events that were introduced through testimony at the trial." *Id.*

The admissibility of evidence concerning the Utah proceedings is the subject of a separate motion in limine. This motion addresses how the government proposes to present summary evidence, whatever the scope of the underlying evidence the Court admits.

## III. ARGUMENT

### A. Summary Testimony Must Rest Entirely on Voluminous Admissible Records or the Witness's Personal Knowledge.

The government may try prove its case is through an agent who "summarizes" the investigation. The agent describes the investigative steps taken, the evidence uncovered, and its significance. The danger is that the agent testifies from hearsay rather than personal knowledge and interprets the evidence in a way

that should be left entirely to the jury.

**1. The Rules Permit Two Narrow Forms of Summary Evidence.**

The Federal Rules of Evidence contemplate two kinds of summaries.

(a) *Rule 1006 Summaries*

Rule 1006 permits a summary, chart, or calculation "to prove the content of voluminous admissible writings, recordings, or photographs that cannot be conveniently examined in court." Fed. R. Evid. 1006(a). The underlying materials must themselves be admissible, and they must be made available to the opposing party. *United States v. Rizk*, 660 F.3d 1125, 1130–31 (9th Cir. 2011); *United States v. Anekwu*, 695 F.3d 967, 981–82 (9th Cir. 2012). A Rule 1006 summary must also be accurate and nonprejudicial. It must fairly represent the underlying records, without embellishment or argumentative characterization. *See United States v. Guirguis*, No. CR 17-00487 HG, 2018 WL 6059376, at *3 (D. Haw. Nov. 19, 2018); *United States v. Graham*, No. CR 13-37-M-DWM, 2013 WL 6383169, at *2 (D. Mont. Dec. 5, 2013).

(b) *Illustrative Aids*

A chart that organizes evidence already admitted, rather than proving the content of voluminous records, is at most an illustrative aid. It is not evidence. *United States v. Wood*, 943 F.2d 1048, 1053–54 (9th Cir. 1991). Since December 1, 2024, Rule 107 governs these aids. An illustrative aid may be used only if its "utility in assisting comprehension is not substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, or wasting time." Fed. R. Evid. 107(a). It may not go to the jury room unless all parties consent or the Court orders otherwise. Fed. R. Evid. 107(b).

Neither Rule authorizes what the government describes here: an agent's step-by-step account of an investigation, built from information he learned from others.

### 2. Overview and Investigative-Narrative Testimony Are Improper.

Investigative-narrative testimony poses two distinct problems: (1) it is often based on hearsay rather than personal knowledge and perception; and (2) it permits the agent to inject his interpretation of the evidence and conclusions.

Out-of-circuit courts have addressed these problems most directly. They condemn "overview" testimony in which a government agent describes the results of an investigation before, or apart from, the evidence that supports it. Such testimony allows "the government to paint a picture of guilt before the evidence has been introduced." *United States v. Casas*, 356 F.3d 104, 117–20 (1st Cir. 2004) (quoting *United States v. Griffin*, 324 F.3d 330, 349 (5th Cir. 2003)). It also typically rests on hearsay and on the agent's conclusions about the investigation as a whole. *See United States v. Meises*, 645 F.3d 5, 13–17 (1st Cir. 2011) (vacating convictions where agent's testimony rested on unidentified information gathered during the investigation); *United States v. Garcia*, 413 F.3d 201, 211 (2d Cir. 2005) (noting it is "error to allow law enforcement witnesses to express opinions as to defendants' culpability based on the totality of information gathered in the course of their investigations").

While the Ninth Circuit has not yet directly addressed the issue of investigative-narrative testimony, it has expressed similar concerns with agent testimony unmoored from personal knowledge. For example, it has repeatedly held that a case agent may not offer interpretations of phone calls based on his general knowledge of the investigation rather than his own perceptions. *See United States v. Gadson*, 763 F.3d 1189, 1207 (9th Cir. 2014) (emphasizing that an agent's testimony interpreting phone calls must be based on the "witness's perception" rather than "speculation or hearsay"); *United States v. Vera*, 770 F.3d 1232, 1242 (9th Cir. 2014) ("[A]n officer may not testify based on speculation, rely on hearsay or interpret unambiguous, clear statements.").

In light of this authority, the Court should require the government to lay a foundation showing that each statement of SA Washburn rests on what he personally perceived rather than learned indirectly from documents or other agents.

**3. Much of SA Washburn's Testimony Fails These Requirements.**

Much of what the government proposes for SA Washburn is neither a Rule 1006 summary, Rule 107 illustrative aid, nor testimony from personal knowledge.

*First*, the government proposes a timeline of "material events in the Kingston/Termendzhyan investigation," including "events from separate but related investigations." Ex. A at 20. That timeline does not summarize voluminous records that cannot conveniently be examined in court. It is a narrative of the investigation. To the extent it describes investigative events Washburn did not personally witness, it is hearsay. Washburn cannot have personal knowledge of investigative steps conducted by others.

*Second*, the government proposes "timelines of key events relevant to the case." Ex. A at 21. Choosing which events are "key" is advocacy, not summary. A timeline built from the government's selection of the evidence it considers most important is advocacy in documentary form. *See United States v. Lemire*, 720 F.2d 1327, 1350 (D.C. Cir. 1983) ("[A] summary should not draw controversial inferences or pronounced judgment; these functions are best left to the closing argument of counsel.").

**B. A Government Agent Should Not Be Permitted to Summarize Other Witnesses' Testimony or Evidence Admitted Through Other Witnesses.**

**1. Summaries of Testimony Are Not Evidence, and Courts Treat Them with Suspicion.**

Another danger of summary testimony is that the government uses it to deliver an early closing argument. The government identifies various pieces of evidence introduced at trial and then asks the agent how they connect to witness testimony or other admitted evidence. The Ninth Circuit has emphasized that it is

"not blind to the dangers of witnesses summarizing oral testimony," and that "such summaries should be admitted under Rule 611(a) only in exceptional cases." *United States v. Baker*, 10 F.3d 1374, 1412 (9th Cir. 1993), *as amended* (Dec. 13, 1993), *overruled on other grounds by United States v. Nordby*, 225 F.3d 1053 (9th Cir. 2000). "[A] summary of oral testimony is generally the purpose and province of closing argument . . . ." *Id.*

Other circuits have repeatedly found error in exactly this practice. For example, the Fifth Circuit has held that a summary witness may not be used to repeat or characterize testimony the jury has already heard, because doing so allows the government to rehash its case and deliver a second closing argument from the witness stand. *United States v. Fullwood*, 342 F.3d 409, 413–14 (5th Cir. 2003); *United States v. Nguyen*, 504 F.3d 561, 572 (5th Cir. 2007); *United States v. Castillo*, 77 F.3d 1480, 1499–1500 (5th Cir. 1996).

**2. The Government Proposes to Do What the Courts Forbid.**

The government has told the defense that SA Washburn will return at the end of its case-in-chief to "introduce and testify about timelines that summarize the evidence introduced at trial." Those timelines will include "the dates of events that were introduced through testimony at the trial." Ex. B at 3. That is a summary of testimony.

Nothing about this case makes it the "exceptional" one *Baker* contemplates. The government's theory rests predominantly on bank records, tax returns, and transaction documents. Those are the materials Rule 1006 actually addresses. The witness testimony will not be so extensive or technical that jurors cannot remember it. The government is free to organize that testimony in closing argument, where the jury will understand that it is hearing advocacy.

The Court should preclude any summary, chart, or timeline of other witnesses' testimony, whether offered under Rule 611(a), Rule 107, or otherwise. Precluded from summarizing evidence already before the jury, the government

should be barred from having Special Agent Washburn testify twice.

### C. Dual-Purpose Summary Testimony Requires Particular Scrutiny.

SA Carfora will testify as a money laundering expert and also as a summary witness presenting non-expert charts of voluminous bank records. That creates a real danger of juror confusion. "Such dual capacity testimony raises additional concerns, however: an agent's status as an expert could lend him unmerited credibility when testifying as a percipient witness, cross-examination might be inhibited, jurors could be confused and the agent might be more likely to stray from reliable methodology and rely on hearsay." *United States v. Vera*, 770 F.3d 1232, 1242 (9th Cir. 2014).

The Ninth Circuit therefore requires district courts to take steps that make the line between lay and expert testimony clear to the jury. *Id.* at 1242–43; *United States v. Freeman*, 498 F.3d 893, 903–04 (9th Cir. 2007); *see also United States v. Torralba-Mendia*, 784 F.3d 652, 659 (9th Cir. 2015). Those steps can include instructing the jury on the dual-role testimony, bifurcating the witness's testimony between the expert and non-expert components, and requiring the government to highlight in its questioning whether a particular question calls for lay or expert testimony. *United States v. Holguin*, 51 F.4th 841, 854–56 (9th Cir. 2022).

These concerns are concrete here. SA Carfora's charts would combine two things the jury must keep separate: what the admitted bank records show, and how the transactions fit into a money laundering scheme. The government's attempt to have SA Carfora testify about the laundering patterns or "effects" of certain transactions is the subject of a separate motion in limine filed concurrently by Mr. Termendjian. But to the extent any of those opinions are permitted, they should be segregated from his role in introducing and testifying about the tracing charts.

## IV. CONCLUSION

The Court should grant the Motion and enter the accompanying Proposed Order.

DATED: October 29, 2026

Ariel A. Neuman
William E. Johnston
Alexander H. Tran
Bird, Marella, Rhow,
Lincenberg, Drooks & Nessim, LLP

By: */s/ William E. Johnston*
William E. Johnston
Attorneys for Defendant Grigor Termendjian

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendant Grigor Termendjian, certifies that this brief contains 2478 words, which complies with the word limit of L.R. 11-6.1.

DATED: October 29, 2026

*/s/ William E. Johnston*

William E. Johnston

## DECLARATION OF WILLIAM E. JOHNSTON

I, William E. Johnston, declare as follows:

1. I am an attorney duly licensed to practice law before this Court and a Partner at Bird, Marella, Rhow, Lincenberg, Drooks & Nessim, LLP, counsel of record for Defendant Grigor Termendjian in the above-captioned action. I submit this declaration pursuant to the Court's Order re: Criminal Proceedings, revised May 29, 2026, regarding the use of generative artificial intelligence. I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto.

2. In the course of preparing Defendant Grigor Termendjian's Notice of Motion and Motion In Limine To Preclude Improper Summary-Witness Testimony of IRS-CI Special Agents James Carfora and Stephen Washburn, a generative artificial intelligence tool was used to assist with research, drafting and editing. The generative artificial intelligence tools used was Microsoft CoPilot .

3. I certify that I or attorneys under my supervision have reviewed the source material underlying the portions of the motion prepared with the assistance of generative artificial intelligence, including the legal authorities and factual assertions contained therein. I or attorneys under my supervision have independently verified that the artificially generated content is accurate, that each legal authority cited exists and supports the proposition for which it is cited, and that the factual representations are supported by the record.

//

//

//

//

//

//

//

4. I further certify that the motion complies with my obligations under Federal Rule of Civil Procedure 11, and that I have made a reasonable inquiry into the legal and factual contentions set forth in the motion.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 29, 2026, at Los Angeles, California.

*/s/ William E. Johnston*
William E. Johnston