Ariel A. Neuman - State Bar No. 241594
aneuman@birdmarella.com
William E. Johnston - State Bar No. 287707
wjohnston@birdmarella.com
Alexander H. Tran - State Bar No. 338940
atran@birdmarella.com
BIRD, MARELLA, RHOW,
LINCENBERG, DROOKS & NESSIM, LLP
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Defendant Grigor Termendjian

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>GRIGOR TERMENDJIAN,<br><br>Defendant. | CASE NO. 2:23-CR-00453-JLS<br><br>**DEFENDANT GRIGOR TERMENDJIAN'S NOTICE OF MOTION AND MOTION *IN LIMINE* TO EXCLUDE EVIDENCE REGARDING INDICTMENT, TRIAL, AND CONVICTION OF LEVON DERMEN AND RELATED PROCEEDINGS**<br><br>*[Filed Concurrently with Declaration of Ariel A. Neuman and [Proposed] Order]*<br><br>Date: December 17, 2026<br>Time: 1:30 p.m.<br>Crtrm: 8A<br><br>Hearing Estimate: 15 minutes<br><br>Assigned to Hon. Josephine L. Staton |

**TO THE COURT, PARTIES, AND ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on December 17, 2026, at 1:30 p.m. or as soon thereafter as this matter may be heard in the above-entitled court, before the Honorable Judge Josephine L. Staton, United States District Judge of the Central District of California in Courtroom 8A located at 350 W. 1st Street, 7th Floor, Los Angeles, California 90012, Defendant Grigor Termendjian will, and hereby does, move *in limine* for an order excluding from trial evidence all evidence and testimony related to the indictment, arrest, detention, trial, and conviction of Levon Dermen, and any related proceedings.

This Motion is made on the grounds that such evidence is 1) irrelevant; 2) would cause unfair prejudice to defendant, confuse the issues, lead to an undue consumption of time, and mislead and inflame the Jury; 3) would constitute inadmissible evidence; and 4) would, in part, violate Mr. Termendjian's constitutional right to confront witnesses against him.

This Motion is based upon this Notice of Motion; the accompanying Memorandum of Points and Authorities; the Declaration of Ariel A. Neuman filed contemporaneously herewith; all of the other pleadings and records on file; and any other evidence and argument as the Court may receive.

This Motion is made following the conference of counsel pursuant to L.R. 7-3 between Defendants' and Government's counsel. *See* Declaration of Ariel A. Neuman ¶ 2.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

DATED: October 29, 2026

Ariel A. Neuman
William E. Johnston
Alexander H. Tran
Bird, Marella, Rhow,
Lincenberg, Drooks & Nessim, LLP

By: */s/ Ariel A. Neuman*
Ariel A. Neuman
Attorneys for Defendant Grigor Termendjian

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..... 1

II. BACKGROUND ..... 4

A. The Utah Prosecution of Levon Dermen ..... 4

B. The Charges Against Mr. Termendjian ..... 4

C. The Government's Stated Theory ..... 5

D. The Limits of the Government's Foundation ..... 6

III. ARGUMENT ..... 7

A. The Government's "Notice" Theory Fails At the Outset ..... 7

B. The Indictment of Dermen Is Not Appropriate Evidence Against Mr. Termendjian ..... 9

C. The Arrest and Detention Hearings Are Not Appropriate Evidence Against Mr. Termendjian ..... 10

D. Testimony During the Dermen Trial Is Not Appropriate Evidence Against Mr. Termendjian ..... 11

1. The Confrontation Clause Bars the Prior Trial Testimony ..... 12

2. Testimony and Evidence From the Dermen Trial Are Inadmissible Hearsay ..... 12

E. Dermen's Conviction Is Not Appropriate Evidence Against Mr. Termendjian ..... 13

F. Forfeiture Proceedings ..... 16

G. 2016 Kingston Search Warrant And Government's Investigation ..... 16

H. Rule 403 Independently Requires Exclusion ..... 17

IV. CONCLUSION ..... 18

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Bruton v. United States*,
391 U.S. 123 (1968) .......... 15

*United States v. Cline*,
148 F.4th 1162 (10th Cir. 2025) .......... 14

*Crawford v. Washington*,
541 U.S. 36 (2004) .......... 12

*United States v. Fairley*,
137 F.4th 503 (6th Cir. 2025) .......... 14

*United States v. Griffin*,
778 F.2d 707 (11th Cir.1985) .......... 14

*United States v. Halbert*,
640 F.2d 1000 (9th Cir. 1981) .......... 13

*United States v. Hansen*,
544 F.2d 778 (5th Cir.1977) .......... 14

*Nipper v. Snipes*,
7 F.3d 415 (4th Cir. 1993) .......... 11

*United States v. Ofray-Campos*,
534 F.3d 1 (1st Cir. 2008) .......... 14

*Old Chief v. United States*,
519 U.S. 172 (1997) .......... 17

*United States v. Sine*,
493 F.3d 1021 (9th Cir. 2007) .......... 11, 15

*United States v. Sitzmann*,
893 F.3d 811 (D.C. Cir. 2018) .......... 14

*United States v. Toner*,
173 F.2d 140 (3d Cir. 1949) .......... 13

*United States v. Yida*,
498 F.3d 945 (9th Cir. 2007) ........ 12

**Federal Statutes**

18 U.S.C. § 371 ........ 5

18 U.S.C. § 1956(a)(1)(B)(i) ........ 5, 14

18 U.S.C. § 1956(h) ........ 5

18 U.S.C. § 1957 ........ 5

21 U.S.C. § 853(e)(1)(A) ........ 7

**Other Authorities**

Federal Rule of Evidence 104(a) ........ 8

Federal Rule of Evidence 401 ........ 17

Federal Rule of Evidence 403 ........ 10, 17

Federal Rule of Evidence 1101(d)(3) ........ 11

Federal Rule of Evidence 803(8)(iii) ........ 11, 15

Federal Rule of Civil Procedure 11 ........ 21

L.R. 11-6.1 ........ 19

L.R. 7-3 ........ 1

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The government wants to try Grigor Termendjian in part by putting his brother's indictment, trial, conviction, and related proceedings in front of the jury, in a manner that would not only violate basic rules of evidence and Constitutional protections, but would cause undue prejudice, consumption of time, and juror confusion. The government's evidence should be excluded.

The government has advised defense counsel that it plans to introduce at Mr. Termendjian's trial:

- the fact of a 2016 search warrant executed on Jacob Kingston and others;
- the 2018 Utah indictment of Mr. Termendjian's brother, Levon Dermen;
- evidence of Dermen's subsequent arrest;
- facts about and evidence presented at Dermen's detention hearing and pretrial detention;
- the fact that Dermen stood trial;
- testimony and evidence presented to the Dermen jury;
- the fact that Dermen was convicted and the charges on which he was convicted;
- unspecified evidence related to forfeiture proceedings in the Dermen case; and
- the fact that Mr. Termendjian attended proceedings in the Dermen case, including the arraignment, detention hearing, and trial.[1]

Declaration of Ariel A. Neuman ("Neuman Decl."), ¶ 2, Ex. 1.

[1] This summary is based on the parties' correspondence and meet and confer efforts. To the extent the government intends to admit evidence or elicit testimony regarding other aspects of the *Dermen* proceedings, Mr. Termendjian moves to exclude those as well for the reasons set forth herein.

The government justifies admitting this vast swath of evidence, none of which concerns Mr. Termendjian's own conduct, under a theory of "notice." Because the charged conspiracies allegedly began in 2013 (Neuman Decl., ¶ 3, Ex. 2, (Indictment ¶¶ 17, 22)), the government focuses its notice argument on the transactions charged in Counts Three through Six. It contends that because those transactions occurred "days" after Dermen's conviction, the jury should infer that Mr. Termendjian knew they involved the proceeds of unlawful activity. Neuman Decl., ¶ 2, Ex. 1.

No limit comes with that theory. Once "notice" is accepted, every filing, hearing, witness, exhibit, and ruling in the *Dermen* case becomes admissible, because Mr. Termendjian might have heard about it. The result would not be a trial of the charges in this indictment. It would be a trial where Mr. Termendjian is forced to litigate all of the proceedings in his brother's prosecution in order to defend himself. And it would be a trial where the jury would hear from government witnesses with the impression that another jury already believed and found them credible. Moreover, it would be a trial where Mr. Termendjian would be presumed guilty by the jury as soon as it heard that his brother was convicted on related charges, eviscerating the constitutional protections that apply in every criminal proceeding.

The Rules of Evidence and the Constitution do not permit the government to do any of this directly, and the "notice" label does not make it permissible indirectly. Another person's indictment, detention, and conviction, and the testimony and evidence presented at that other person's trial, would not normally be admissible against a different person. Prohibitions on admission of such evidence exist because a defendant has a constitutional right to confront witnesses whose testimony is presented to the jury, and because juries give accusations, verdicts, and judicial findings weight they have not earned against the person on trial. The government's "notice" theory relies on exactly that weight. The jury would be asked

to infer that, because those proceedings found or alleged that crimes occurred, Mr. Termendjian must have known that the money in his possession – even though it was in an account not mentioned in the *Dermen* indictment and came from indisputably "clean" sources – was proceeds of a crime. That is the inference these rules forbid, and no limiting instruction can tell a jury to draw it for one purpose but not another.

Beyond the evidentiary and constitutional protections that should prohibit the government's plan, its desired inference is not supported. The government's own conduct undermines its "notice" argument and would have suggested to Mr. Termendjian exactly the opposite of what the government now contends. Mr. Termendjian's name was barely mentioned at his brother's trial, neither he nor the relevant entity at issue here are mentioned in his brother's indictment, and the government took no steps to actually put Mr. Termendjian on notice that he was holding proceeds of criminal conduct (it never questioned him, froze his money, or even asked him to hold it while it continued its investigation). But this trial should not be about whether the government's prosecution of other defendants did or did not put Mr. Termendjian on notice. The trial should be about the direct evidence of what Mr. Termendjian knew, intended, and did. Arguing about the effects of the government's actions in the *Dermen* case and vis-à-vis Mr. Termendjian will be a confusing sideshow that will consume an enormous amount of time, mislead the jury, and ultimately be exceedingly and unduly prejudicial to Mr. Termendjian.

If the government has evidence of what Mr. Termendjian knew, it can present it the ordinary way. The witnesses from the *Dermen* trial are available. The government can call them, and the jury can hear their testimony under cross-examination by the person it is offered against. What the government cannot do is skip that process by presenting the accusations, findings, and outcome of another person's case. Mr. Termendjian is entitled to be tried on the evidence against him, not on what happened to his brother. The Court should exclude all evidence of the

*Dermen* proceedings.

## II. BACKGROUND

### A. The Utah Prosecution of Levon Dermen

In August 2018, the original indictment charging Jacob Kingston, Isaiah Kingston, and Levon Dermen with a variety of crimes was unsealed in Utah. Neuman Decl., ¶ 3, Ex. 2. in this prosecution was unsealed in Utah. The operative indictment at the time of trial was a Second Superseding Indictment filed in February 2019, which charged those three defendants, together with Rachel Kingston and Sally Kingston, with conspiracy to commit mail fraud, aiding in the preparation and filing of a false claim/return, conspiracies to commit various money laundering offenses, substantive money laundering offenses, conspiracy to commit obstruction of justice offenses, destroying and concealing records and objects, and attempted force or threat of force. Neuman Decl., ¶ 3, Ex. 3.

During course of the proceedings in Utah, Dermen was detained, the Kingstons all pleaded guilty and cooperated against Dermen, a lengthy trial was held, and Dermen was ultimately convicted in March 2020. Forfeiture proceedings followed. For the sake of brevity, the details of those proceedings are not discussed here, but the lengthy and complicated docket from the Utah case is attached as Exhibit 6 to the Neuman Decl.

None of the indictments in that case mentioned Mr. Termendjian or referenced him as an unindicted co-conspirator. Neuman Decl. ¶ 4. None of the indictments mentioned the entities Century Energy, Vernon Truck Wash, Petrolion, Speedy Fuel Distribution, or International Pita Bread, which are the main entities at issue here. *Id.* It is counsel's understanding that Mr. Termendjian's name came up only in passing at the trial, and not in any manner that would have put him on notice that he was in possession of proceeds of a crime. Neuman Decl. ¶ 4.

### B. The Charges Against Mr. Termendjian

Three years after Dermen's conviction, in March 2023, an indictment was

returned in the District of Utah charging Mr. Termendjian with conspiracy to defraud the United States (18 U.S.C. § 371), conspiracy to commit money laundering offenses (18 U.S.C. § 1956(h)), and four counts of expenditure money laundering (18 U.S.C. § 1957) – Counts Three through Six – based on transactions that occurred in October 2019 when Mr. Termendjian allegedly made certain transfers of funds from an account held by Century Energy to other entities. ECF No. 1-2. The case was subsequently transferred to this Court on Mr. Termendjian's motion. On July 22, 2025, a Superseding Indictment was filed in this Court once the government recognized that its tracing theories as to Counts 3 through 6 were contrary to Ninth Circuit law, swapping out the previously-charged Counts Three through Six for alleged violations of 18 U.S.C. § 1956(a)(1)(B)(i), concealment money laundering, based on transactions that all allegedly occurred on March 23, 2020, involving transfers of funds from Century Energy to certain businesses owned by Mr. Termendjian, namely, Vernon Truck Wash, Petrolion, Speedy Fuel Distribution, or International Pita Bread.(ECF No. 85.

### C. The Government's Stated Theory

Anticipating that the government may seek to introduce evidence related to the trial of Dermen at Mr. Termendjian's trial, defense counsel initiated a meet and confer on October 13. Neuman Decl., ¶ 2, Ex. 1. The government responded in writing and counsel for the parties subsequently held a further telephonic discussion on October 20. *Id.* The government stated that it not only intends to reference the trial of Dermen, but that it intends to admit the following into evidence 1) the fact that Levon Dermen and the Kingstons were being investigated between 2014 and 2019; 2) that "the Kingstons were subject to a search warrant in 2016;" 3) that Dermen and the Kingstons were arrested in 2018 upon the unsealing of an indictment, and Dermen was arraigned in Los Angeles; 4) that a superseding indictment was filed against Dermen and the Kingstons in 2019 alleging in part that they stole $511 million and laundering the proceeds, "in part to and through the

Speedy Lion account"; 5) that Dermen was detained after evidentiary hearings in 2018 and in 2019 and that Mr. Termendjian attended some of these hearings; 6) that Dermen was tried before a jury in Utah in early 2020 at a trial in which Jacob Kingston testified about stealing and laundering money with Dermen; and 7) that the transactions that form the basis of Counts 3 through 6 in the First Superseding Indictment of Mr. Termendjian occurred "just days after the jury convicted his brother of stealing the funds from the IRS and laundering them, in part to Speedy Lion." Neuman Decl., ¶ 2, Ex. 1.

The government indicated that such evidence will be used to prove that Mr. Termendjian "knew that the money he received from his brother Lev Dermen and from the Kingstons, and from those associated with his brother, was proceeds from some form of unlawful activity." *Id.* The government emphasized as follows:

> His knowledge of the allegations against his brother, the investigation, arrest, indictment, evidence, trial and conviction, is especially relevant to prove his state of mind and knowledge regarding the transactions he is charged in Counts 3 through 6 of the Superseding Indictment with conducting just days after the jury convicted his brother of stealing the funds from the IRS and laundering them, in part to Speedy Lion.

*Id.*

### D. The Limits of the Government's Foundation

The defense is not aware of any notes, reports, or other evidence demonstrating Mr. Termendjian's attendance at any particular hearing or trial day in the Dermen matter, nor any evidence that he specifically heard any particular piece of testimony or saw any particular document at any such proceeding. Defense counsel believes that all of the witnesses from the Dermen trial are available to testify at Mr. Termendjian's trial, and it is defense counsel's understanding that the government intends to call many of them to testify again. Defense counsel is not aware of any evidence that Mr. Termendjian knew of the 2016 search warrant at or around the time it was executed, or was aware of the government's investigation

until it was publicly announced with the arrest of Dermen and the Kingstons.

## III. ARGUMENT

### A. The Government's "Notice" Theory Fails At the Outset

Apart from all of the arguments discussed *infra* about why the government's plan is unconstitutional and contrary to the rules of evidence, there is a basic problem with its theory that the Dermen proceedings put Mr. Termendjian on notice that he was in possession of tainted funds. Namely, the government's actions during that time suggested the opposite.

The government had every opportunity to freeze those funds, seize them, or even advise Mr. Termendjian that they were tainted, between 2016 (when it conducted its first search warrant) until 2018 (when it indicted his brother) to 2020 (when his brother was convicted). *The government did not even question Mr. Termendjian during that time*, let alone take any steps that would suggest to him that he was in possession of tainted funds. Indeed, the government waited until September 2021—18 months after Dermen was convicted and the transactions charged as Counts Three through Six occurred—before obtaining and serving Mr. Termendjian with a restraining order under 21 U.S.C. § 853(e)(1)(A) that froze any assets controlled by Century Energy. Neuman Decl., ¶ 5, Ex. 4.

In the meantime it charged numerous individuals with various crimes, seized and froze assets not belonging to Mr. Termendjian or one of his companies, and took other steps to further its investigation. It had witnesses testify at length about the charged scheme – including at trial – and Mr. Termendjian's name was rarely mentioned, and never as a co-conspirator. Neuman Decl., ¶ 4. If the government's investigation and prosecution told Mr. Termendjian *anything*, it was the opposite of what the government now claims, i.e., that whatever his brother may or may not have done, he had not ended up with proceeds from any of it. A reasonable person in his shoes would conclude that if the government thought otherwise, it would take steps to secure those funds in some respect or at least advise him that he should not

dissipate them. Instead, the government did nothing that would have put Mr. Termendjian on notice.

The government's argument is that the transactions in Counts 3 through 6 occurred "just days after the jury convicted his brother of stealing the funds from the IRS and laundering them, in part to Speedy Lion." Neuman Decl., ¶ 2, Ex. 1. But critically, the transactions identified in Counts 3 through 6 involved different entities – withdrawals from Century Energy with payments made to other entities owned by Mr. Termendjian: Vernan Truck Wash, LLC, Petrolion, Inc., Speedy Fuel Distribution, Inc., and International Pita Bread, Inc. First Superseding Indictment ¶¶ 19 (M, N, O, P); Counts 3 through 6. Moreover, the Century Energy account from which the transactions in Counts Three through Six originated contained over $9 million from other sources—*funds that even the government, in the tracing analysis it conducted for the forfeiture trial, has conceded are clean*. Neuman, Decl., ¶ 6, Ex. 5. And they followed deposits *into* Century Energy from those exact same four entities the prior year, in exactly the same amounts that were withdrawn in the allegedly criminal transactions. The government does not dispute that these entities were legitimate businesses with entirely "clean" money. How exactly should Mr. Termendjian have known that one day the government would allege that money somehow was actually proceeds of a crime? The government does not say.

Thus, the government's plan to use incredibly prejudicial, irrelevant, and improper evidence fails at the outset and should not be permitted, given that it does not even support the inference the government wants to argue. A person can know that a relative has been charged, and even convicted, without knowing that any particular dollar in a later transaction came from the crime. Under Federal Rule of Evidence 104(a), the government's theory needs a link it has not identified: evidence that Mr. Termendjian learned, from these proceedings, facts showing that the specific funds in Counts Three through Six were proceeds of the offense. Without that link, the Dermen proceedings show only that Mr. Termendjian has a

brother who was prosecuted. Such evidence would be unduly prejudicial, and it would consume an enormous amount of time and energy for the defense to confront all of the evidence about what happened in an entirely separate proceeding. The jury would be confused and left with only one impression: it should convicted Mr. Termendjian because his brother was charged and convicted with worse crimes.

**B. The Indictment of Dermen Is Not Appropriate Evidence Against Mr. Termendjian**

Ninth Circuit Model Criminal Instruction 6.2 – which the jury in Mr. Termendjian's case will presumably receive – states that an "indictment is not evidence" and that a "defendant is presumed innocent unless and until" proven otherwise beyond a reasonable doubt. The government's effort to use the Dermen indictment *as* evidence would directly undermine that instruction and confuse the jury. It would also be unduly prejudicial to Mr. Termendjian. Learning that one's brother has been charged shows only that the government has made an accusation. It does not show that Mr. Termendjian believed the accusation, still less that he knew any particular funds were criminally derived.

Moreover, if it is the fact that, as the government contends, Mr. Termendjian conducted the transactions at issue just "days" after Dermen was convicted, then the fact of his indictment several years earlier is irrelevant. This shows the hole in the entirety of the government's premise: if the conviction is what gave Mr. Termendjian notice, then everything that preceded it is irrelevant, whereas if the indictment gave him notice, then everything that came after is irrelevant. Either way, the indictment has no legitimate probative value of its own. Rather than actually seeking to prove some notice to Mr. Termendjian, the government improperly intends to taint him with the entirety of the proceedings against his brother.

In any event, the Dermen indictment does not reference Century Energy, which is the source of the transactions at issue in Counts 3 through 6. Even if Mr.

Termendjian read every word of it, the indictment would not have told him that the money in these transactions was proceeds of anything. Rather, Century Energy is steps removed from any account referenced in the Dermen indictment, and the charged transactions occurred years later than anything referenced in the Dermen indictment. Indeed, as far as counsel can ascertain, the words "Century Energy" were not even uttered at Dermen's trial. Moreover, the Century Energy account from which the transactions in Counts Three through Six originated contained over $9 million from other sources—funds that even the government, in the tracing analysis it conducted for the forfeiture trial, has conceded are clean. Neuman Decl., ¶ 6, Ex. 5. There is no basis to conclude that the indictment (or anything else about the Dermen proceedings) put Mr. Termendjian on notice of anything, and allowing it to be presented to the jury will only confuse the issues, force counsel to spend time addressing the contents of the Dermen indictment, and be unduly prejudicial to Mr. Termendjian.

An indictment sets out the government's case in narrative form, without oath, cross-examination, or any requirement of proof. Reading or describing it to this jury, or allowing it into evidence, would give the government an extended, unrebuttable view of its theory of a related scheme, attributed to Mr. Termendjian's brother and implicitly to Mr. Termendjian. In theory, one could imagine a scenario where its content should be excluded under Rule 403 even if the Court allows some reference to the fact of the charges. But if the content is excluded, then the government's theory for admitting even the fact of its existence falls apart. Accordingly, all evidence of the indictment should be excluded at Mr. Termendjian's trial.

### C. The Arrest and Detention Hearings Are Not Appropriate Evidence Against Mr. Termendjian

Dermen's arrest adds nothing to notice beyond the fact of the charges. For the reasons set forth above, it is irrelevant and unduly prejudicial.

The detention hearing is even more prejudicial because it tells the jury a judge

found Mr. Dermen dangerous or a flight risk. That finding would only even arguably be relevant based on a conclusion that the judge's finding was true, but the Ninth Circuit has held that a judge's findings from a prior proceeding are inadmissible hearsay when offered for their truth, and that putting them before a jury creates a serious danger of unfair prejudice because jurors give them undue weight. *United States v. Sine*, 493 F.3d 1021, 1033–36 (9th Cir. 2007); *accord Nipper v. Snipes*, 7 F.3d 415, 417–18 (4th Cir. 1993). None of this has any bearing on what Mr. Termendjian knew about the source of any funds.[2]

To the extent the government is focused on the evidence it presented at the detention hearings, that is problematic for the same reasons as is the evidence presented at Dermen's trial, which is discussed *infra*, but more so since the rules of evidence do not apply at a detention hearing. Fed. R. Evid. 1101(d)(3). Accordingly, the government would use this as a route to put before the jury evidence that would otherwise be inadmissible in Mr. Termendjian's trial. To the extent it only wants to present the actual evidence it presented at the detention hearings (but not that it was presented there), it is of course free to call witnesses or enter exhibits into evidence subject to the Rules of Evidence.

### D. Testimony During the Dermen Trial Is Not Appropriate Evidence Against Mr. Termendjian

It is unclear how the government intends to put on evidence of the testimony presented at the Dermen trial, but its admission – whether by transcript or testimony about the testimony – would violate the constitution and the Rules of Evidence.[3]

---

[2] Further, Fed. R. Evid. 803(8)(iii) makes clear that factual findings from another proceeding are not admissible against a defendant in a criminal case.

[3] To the extent transcripts from prior proceedings are necessary to impeach government witnesses, the defense intends to reference the witness's "prior testimony under oath at a different proceeding," or something similar, as instructed by the Court.

**1. The Confrontation Clause Bars the Prior Trial Testimony**

Testimony given at a prior trial is "testimonial" in the most basic sense. *Crawford v. Washington*, 541 U.S. 36, 68 (2004) ("Whatever else the term ['testimonial'] covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial[.]") It may be admitted against an accused only if the witness is unavailable and the accused had a prior opportunity for cross-examination. *Id.*; *see also United States v. Yida*, 498 F.3d 945, 950 (9th Cir. 2007) (unavailability is an independent constitutional requirement). It is defense counsel's understanding that all of the witnesses from the Dermen trial are available to the government and many are expected to testify at Mr. Termendjian's trial. Mr. Termendjian obviously did not have an opportunity to cross-examine them. Accordingly, neither constitutional requirement is met.

**2. Testimony and Evidence From the Dermen Trial Are Inadmissible Hearsay**

The government's description of what it plans to offer – testimony and evidence that was presented to the Dermen jury – amounts to an offer of out-of-court statements. The government cannot credibly avoid *Crawford* by claiming the testimony is not offered for its truth: the government's desired inference of "notice" depends on the truth of the testimony (i.e., that the testimony established that the funds Mr. Termendjian had were proceeds of a crime). If not true then the testimony is irrelevant. But if offered for its truth, it violates *Crawford*. No exception to the hearsay prohibition applies.

The government's notice / effect-on-the-listener argument also raises a basic foundational problem. Statements offered for their effect on a listener are relevant only if the listener heard them, and the government has not produced any evidence to show that Mr. Termendjian heard any particular statement; it relies on the general proposition that he was in the courtroom for some proceedings. It can show that Mr. Termendjian attended some proceedings, but not which ones, which witnesses he

heard, or which exhibits he saw. A multi-week trial record cannot be attributed to a spectator who was present for unidentified portions on unidentified days.[4] Without that foundation, testimony and exhibits from the Dermen trial say nothing about what Mr. Termendjian knew. They are simply the government's evidence against Dermen, offered in a second trial.

The argument also does not reflect how the evidence would actually work. The government's inference is that Mr. Termendjian knew the funds were dirty because the evidence at Mr. Dermen's trial showed they were. That inference depends on the evidence being true. Thus, the "effect on the listener" exception would be a backdoor for the government to get in hearsay evidence for its truth.

### E. Dermen's Conviction Is Not Appropriate Evidence Against Mr. Termendjian

There is a long-standing, well-recognized rule that the government may not use the conviction of an alleged co-conspirator as evidence against another defendant. "As a principle of general acceptance, the guilty plea or conviction of a codefendant may not be offered by the government and received over objection as substantive evidence of the guilt of those on trial." *United States v. Halbert*, 640 F.2d 1000, 1004 (9th Cir. 1981). A defendant is entitled to a verdict based on the evidence against him, not on what another jury decided about someone else. *United States v. Toner*, 173 F.2d 140, 142 (3d Cir. 1949) (every defendant has a "right [. . .] to stand or fall with the proof of the charge made against him, not against somebody else"). *Halbert* and *Toner* involved co-defendant guilty pleas, but the rule applies with even greater force to a jury verdict. A plea is at least the declarant's own

---

[4] The government not only cannot prove that Mr. Termendjian was present for the presentation of any particular evidence or testimony, but it also cannot prove that he heard or understood it. Mr. Termendjian is a layman for whom English is a second language. The idea that he heard and understood the intricacies of all legal proceedings is entirely unfounded.

admission. A verdict is a collective judgment by twelve strangers, reached on a record Mr. Termendjian had no part in making. Other circuits all agree. *United States v. Cline*, 148 F.4th 1162, 1168 (10th Cir. 2025); *United States v. Fairley*, 137 F.4th 503, 523 (6th Cir. 2025); *United States v. Sitzmann*, 893 F.3d 811, 830 (D.C. Cir. 2018); *United States v. Ofray-Campos*, 534 F.3d 1, 22-23 (1st Cir. 2008).

The rule serves two purposes. First, it keeps the jury from finding guilt by association. *Sitzmann*, 893 F.3d at 830. The jury should not be permitted to infer that a defendant's association with others who engaged in crime proves his own knowing participation. Second, the rule requires the government to prove each element against the defendant on trial instead of borrowing a finding from another proceeding. *Cline*, 148 F.4th at 1169 (citation omitted). The association problem is especially serious here because Dermen is Mr. Termendjian's brother. Once jurors learn that a federal jury convicted Mr. Termendjian's brother for conduct connected to the same events, there is a real risk they will treat Mr. Termendjian's guilt as settled and the trial as "a mere formality." *United States v. Griffin,* 778 F.2d 707, 711 (11th Cir.1985); *see also United States v. Hansen,* 544 F.2d 778, 780 (5th Cir.1977) (prejudice "obvious" from introduction of alleged co-conspirator's conviction).

While the government appears to take the position that it only seeks to offer the conviction to prove "notice" and not guilt, in fact on the government's own theory the conviction is offered to prove an element of the charged offenses. Counts Three through Six require proof that Mr. Termendjian knew the funds involved in the transactions were proceeds of some form of unlawful activity. 18 U.S.C. § 1956(a)(1)(B)(i). The government's proposed argument to the jury is that the transactions occurred "days" after Dermen's conviction, so Mr. Termendjian must have known the money was tainted. That inference works only if the jury here first accepts that the conviction established that the underlying conduct was criminal and that the money came from that conduct. In other words, the government wants to

make substantive use of Dermen's conviction to prove an element against Mr. Termendjian, which the rule forbids. A different label does not change the inference the jury is asked to draw.

Indeed, the basis of the government's proposed argument is that the jury here should accept the *Dermen* jury's declaration that the allegations against Dermen were true, and it was that declaration which put Mr. Termendjian on "notice" of the "facts" alleged by the government. That is, the government wants to use the imprimatur of the jury's finding in *Dermen* to prove the underlying element in Mr. Termendjian's case. As noted, the Ninth Circuit has held that a judge's findings from a prior proceeding are inadmissible hearsay when offered for their truth, and that putting them before a jury creates a serious danger of unfair prejudice because jurors give them undue weight. *Sine*, 493 F.3d at 1033–36. A jury verdict stands on the same footing.[5]

The problem would not be cured with a limiting instruction. A limiting instruction would presumably tell the jury to consider the verdict only for the notice it provided to Mr. Termendjian. Putting aside that it is implausible that a jury could follow that instruction,[6] in fact the conviction would be used to ask the jury to draw exactly the inference an instruction would tell it not to draw, i.e., that the allegations in the *Dermen* case were true.

Evidence of the Dermen conviction carries a second, distinct prejudice. It tells this jury that another jury has already accepted the government's investigation, its witnesses and its theory of the case. In effect, it has the *Dermen* jury vouch for the prosecutor, the case agent, and the witnesses who testified in that case and are

---

[5] As noted *supra*, Fed. R. Evid. 803(8)(iii) makes clear that factual findings from another proceeding are not admissible against a defendant in a criminal case.

[6] The Supreme Court has recognized that some inferences are so powerful that jurors cannot be expected to disregard them on instruction. *Bruton v. United States*, 391 U.S. 123, 135–36 (1968).

expected to testify here. That is improper. The government would not be permitted to argue that its case had already been proven before another jury. It should not be permitted to introduce evidence that makes the same point.

**F. Forfeiture Proceedings**

It is unclear exactly what the government wants to say about the Dermen case's forfeiture proceedings, but any such evidence again invites the jury to infer that money connected to the Dermen family was proven tainted, which is the very issue in the charges in the First Superseding Indictment, and specifically in Counts Three through Six. For the reasons already discussed, such evidence is not appropriately admitted.

**G. 2016 Kingston Search Warrant And Government's Investigation**

It is also unclear exactly what the government wants to say about the 2016 Kingston search warrant and its investigation prior to the arrest of Dermen. The defense is not aware of any evidence suggesting that Mr. Termendjian had contemporaneous knowledge of either, or when he might have learned about them. Nor is the fact that the government was investigating other people relevant to what Mr. Termendjian knew.

To the extent the government wants to admit the allegations it made in support of the search warrant, those are of course hearsay not subject to any exception, and the defense is anyway aware of no evidence that Mr. Termendjian had access to and/or read the affidavit in support of the search warrant at any time, which is where those allegations were contained. The fact of a search warrant on a third party of course told Mr. Termendjian nothing about funds he received from different entities at a different period in time. And the fact that the government had certain suspicions about others that it was investigating would anyway not put him on notice that he was in possession of proceeds of criminal activity.

### H. Rule 403 Independently Requires Exclusion

The government's proffered evidence has minimal probative value. Importantly, the government also has better alternatives. It can call available witnesses live, and it can offer any direct evidence of what Mr. Termendjian actually knew about the funds. *Old Chief v. United States*, 519 U.S. 172, 184 (1997) ("what counts as the Rule 403 'probative value' of an item of evidence, as distinct from its Rule 401 'relevance,' may be calculated by comparing evidentiary alternatives).

That is the appropriate way to proceed in this case because the risk of unfair prejudice from the government's plan is severe. Telling the jury that a federal jury convicted Mr. Termendjian's brother, that he was detained before trial, and that his assets were forfeited invites the guilt-by-association reasoning the law forbids. The family relationship makes the risk worse. Jurors will already be inclined to assume that brothers share each other's knowledge and conduct; telling them that one brother was convicted will short-circuit their path to conviction. Moreover, determinations made by a court carry particular weight with juries precisely because they come from a court.

Further, the evidence would cause confusion and undue delay. Admitting the Dermen proceedings would require a trial within a trial: the investigation, the detention decision, the trial record, the verdict, etc. Mr. Termendjian would have to respond to each piece, including by explaining what the Dermen jury did and did not decide and what was and was not proven about Mr. Termendjian. This would sidetrack the jury from the questions it must decide and add days of collateral evidence.

Nor would a limiting instruction cure the prejudice. The jury would presumably be told to use the evidence for "notice" but not for guilt, when the government's notice theory is itself a theory of guilt. That instruction is not one jurors can realistically follow.

## IV. CONCLUSION

For the foregoing reasons, Mr. Termendjian respectfully requests that the Court exclude all evidence regarding the *Dermen* proceedings, including the investigative steps, indictment(s), pretrial hearings, trial testimony, conviction, sentencing and forfeiture. This case is about what Mr. Termendjian knew and intended, and he should be permitted a fair trial based on evidence of these elements, not based on his familial relationships.

DATED: October 29, 2026

Ariel A. Neuman
William E. Johnston
Alexander H. Tran
Bird, Marella, Rhow,
Lincenberg, Drooks & Nessim, LLP

By: *[/s/ Ariel A. Neuman]*
Ariel A. Neuman
Attorneys for Defendant Grigor Termendjian

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Grigor Termendjian, certifies that this brief contains 5,652 words, which complies with the word limit of L.R. 11-6.1.

DATED: October 29, 2026

*/s/ Ariel A. Neuman*

Ariel A. Neuman

# DECLARATION OF ARIEL A. NEUMAN

I, Ariel A. Neuman, declare as follows:

1. I am an attorney duly licensed to practice law before this Court and a Partner at Bird, Marella, Rhow, Lincenberg, Drooks & Nessim, LLP, counsel of record for Defendant Grigor Termendjian in the above-captioned action. I submit this declaration pursuant to the Court's Order re: Criminal Proceedings, revised May 29, 2026, regarding the use of generative artificial intelligence. I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto.

2. In the course of preparing Defendant Grigor Termendjian's Notice Of Motion And Motion In Limine To Exclude Evidence Regarding Indictment, Trial, And Conviction Of Levon Dermen And Related Proceedings, generative artificial intelligence tools were used to assist with research, drafting and editing. The generative artificial intelligence tools used were Microsoft CoPilot and Thomson Reuters CoCounsel.

3. I certify that I or attorneys under my supervision have reviewed the source material underlying the portions of the motion prepared with the assistance of generative artificial intelligence, including the legal authorities and factual assertions contained therein. I or attorneys under my supervision have independently verified that the artificially generated content is accurate, that each legal authority cited exists and supports the proposition for which it is cited, and that the factual representations are supported by the record.

//

//

//

//

//

//

4. I further certify that the motion complies with my obligations under Federal Rule of Civil Procedure 11, and that I have made a reasonable inquiry into the legal and factual contentions set forth in the motion.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 29, 2026, at Los Angeles, California.

*/s/ Ariel A. Neuman*
Ariel A. Neuman