TODD BLANCHE
Acting Attorney General
BILAL A. ESSAYLI
First United States Attorney
JENNIFER L. WAIER
Chief Assistant United States Attorney
Chief, Criminal Division
RICHARD M. ROLWING (OH Bar No. 0062368)
Senior Litigation Counsel
MEGAN L. JONES (CA Bar No. 348651)
Trial Attorney
National Fraud Enforcement Division, Tax Section
950 Pennsylvania Ave. NW
Washington D.C. 20530
Telephone: (202) 598-5471
E-mail: Richard.m.rolwing@usdoj.gov

Attorneys for the United States

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff

v.

GRIGOR TERMENDJIAN,

Defendant.

No. 2:23-CR-00453-PA

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE* SEEKING TO EXCLUDE EVIDENCE OF RELATED PROCEEDINGS; MEMORANDUM OF POINTS AND AUTHORITIES

Hearing Date: December 17, 2026
Hearing Time: 1:30 p.m.
Location: Courtroom of the Hon. Percy Anderson

Plaintiff United States of America, by and through its undersigned counsel, hereby opposes defendant GRIGOR TERMENDJIAN's Motion *in Limine* to Exclude Evidence Regarding Indictment, Trial, and Conviction of Levon Dermen and Related Proceedings. (Dkt. No. 215).

This Opposition is based upon the attached memorandum of points and authorities and the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: November 12, 2026

Respectfully submitted,

COLIN M. MCDONALD
Assistant Attorney General
National Fraud Enforcement Division

*/s/ Megan L. Jones*
RICHARD M. ROLWING
Senior Litigation Counsel
MEGAN L. JONES
Trial Attorney

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

On July 22, 2025, the grand jury returned the first Superseding Indictment as to Defendant Grigor Termendjian. (Dkt. No. 85). The indictment charged Defendant with one count of Conspiracy in violation of 18 U.S.C. § 371, one count of Conspiracy to Commit Money Laundering in violation of 18 U.S.C. § 1956(h), and four counts of Money Laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i). (*Id.*).

While this case was charged in 2025[1], the facts alleged span as far back as 2013, when the fraud proceeds at issue in this case were first obtained. The government's involvement in investigating and prosecuting this case similarly dates back a decade. Grand jury subpoenas were served on Washakie in 2014. A federal agent confronted Lev Dermen in 2015. On February 10, 2016, the government executed a search warrant on several premises related to the Kingstons, who were involved in the Washakie Fraud Scheme and this money laundering conspiracy. In August 2017, federal agents executed a search warrant on Lev Dermen's properties. On August 1, 2018, several participants in the Washakie Fraud Scheme were charged via sealed indictment ("the Dermen case"). (*See* District of Utah, 18-cr-00365-JNP, Dkt. No. 1). The defendants in that case were Lev Derman (Defendant's brother), Jacob Kingston, and Isaiah Kingston. (*Id.*). On August 23, 2018, Defendant's brother and his co-defendants were arrested. (*Id.* at Dkt. Nos. 8-29), and on August 24, 2018, the indictment was unsealed. (*Id.* at Dkt. No. 10).

---

[1] The original indictment was filed in the District of Utah on March 29, 2023. *See* District of Utah No. 23-cr-00119-DAK-1.

The final indictment filed in the Dermen case was the Second Superseding Indictment, which was filed on January 17, 2019 and unsealed on January 22, 2019. (*Id.* at Dkt. No. 135). Among many other charges, the indictment alleged violations of 18 U.S.C. § 1349 (Conspiracy to Commit Mail Fraud), 18 U.S.C. § 1956(h) (Conspiracy to Commit Money Laundering) and 18 U.S.C. § 1956(a)(1)(B)(i) (Money Laundering). At its core, the indictment alleged that the defendants had fraudulently obtained $511 million in refundable tax credits and then laundered the hundreds of millions of proceeds of their fraud. The Second Superseding indictment specified that the $38 million in funds wired to (now Defendant) Termendjian's Speedy Lion Renewable Fuel Investments, LLC were fraud proceeds and were part of the money laundering conspiracy charged. The Second Superseding indictment also specified that the Huntington Beach house Termendjian purchased in March 2015 was part of the conspiracy and that the house was purchased using fraud proceeds.

Defendant's brother, Dermen, was arrested in Los Angeles and pleaded not guilty. Defendant Termendjian was in attendance at many of the public proceedings, e.g., the arraignments, the many detention hearings, the status conferences, and pre-trial conferences, etc., involving his brother Dermen, both in Los Angeles and Utah. He was present on August 28, 2018 in Los Angeles, and in Utah in October 2018, and in March and November 19, 2019 when the court held detention hearings on Dermen's bond conditions. (*Id.* at Dkt. Nos. 45, 718). More importantly, he was in attendance when the case went to trial in January of 2020 and continued through March. Defendant attended the trial proceedings on a daily basis nearly the entire trial, and was present when both Jacob and Isaiah Kingston testified

about their criminal fraud and money laundering with Lev Dermen. On March 16, 2020, the jury returned a verdict of guilty against his brother Dermen on all counts. (*Id.* at Dkt. No. 934). This included one count of conspiracy to commit mail fraud, one count of 18 U.S.C. § 1956(h) conspiracy to commit money laundering, and eight counts of money laundering. In order to reach its verdict, the jury had to find that Dermen conducted financial transactions with proceeds from an unlawful activity.

As part of its case in chief, the government intends to introduce evidence demonstrating that Defendant was aware at least as early as 2015 that an investigation of his brother and his brother's Washakie associates was taking place, aware that a search warrant had been executed in Utah on Washakie and related premises in 2016, aware that a search warrant was executed on Dermen's business and personal properties in Los Angeles in 2017, and aware as well of the 2018 indictments and arrests. Further, the government intends to show that Termendjian attended many pre-trial and trial proceedings during the Dermen case. This evidence, along with other facts, will go to prove that Defendant had knowledge as required by 18 U.S.C. § 1956(h) and 18 U.S.C. § 1956(a)(1)(B)(i) that the funds he received into his account which he knew were sourced from Washakie and his brother, and the funds which purchased his house which he knew were from Washakie and his brother were from some form of criminal activity. The fact that Defendant knew specifically that the government investigated, charged, and convicted Dermen and the Kingstons makes it more likely that Defendant was aware and became aware that the transactions he undertook were the proceeds of some form of criminal activity.

## II. ARGUMENT

### A. The evidence is relevant to proving Defendant's knowledge.

Under Federal Rule of Evidence 401, evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. The evidence that Defendant seeks to exclude is relevant because it goes to an element of two of the crimes with which the defendant is charged.

Defendant is charged with conspiracy under 18 U.S.C. § 1956(h) to commit disguise and conceal and expenditure money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 1957. In order to convict him of that crime, the government must establish (1) an agreement to engage in financial or monetary transactions; (2) the transaction involved the proceeds of unlawful activity; (3) the defendant knew that the proceeds were from unlawful activity; and either (4) the transaction involved more than $10,000 of proceeds; or (5) the defendant knew that the transaction was designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity. 18 U.S.C. § 1956. "Knowledge of the objective of the conspiracy is an essential element of any conspiracy conviction." *United States v. Moreland*, 622 F.3d 1147, 1169 (9th Cir. 2010) (quoting *United States v. Krasovich*, 819 F.2d 253, 255 (9th Cir. 1987)). Knowledge may be proven through circumstantial evidence and inferences drawn from the evidence. *United States v. Johnson*, 297 F.3d 845, 868-69 (9th Cir. 2002).

The government need not prove an overt act. *Whitfield v. United States*, 543 U.S. 209, 219 (2005). However, the indictment alleges

many acts that took place before, during, and immediately after the Dermen investigation and related proceedings ran its course, which go to show knowledge. Even if Defendant were to argue, as he likely will, that he was not aware of the unlawful object of the transactions that took place in 2015 or earlier, that argument grows less credible as he observed the proceedings against Dermen and the Kingstons over several years. The compounding effects of the interaction with a federal agent, search warrants, the arrest, arraignment, the detention hearings, the trial, and the verdict will demonstrate that, if not at the outset, then at least in some point in the charged conspiracy, Defendant achieved the requisite knowledge to be found guilty. Thus, this evidence is relevant as it goes to a necessary element of one of the crimes charged.

Defendant is also charged with substantive counts of disguise and conceal money laundering under 18 U.S.C. 1956(a)(1)(B)(i). To convict the defendant, the government must prove that

> (1) the defendant conducted or attempted to conduct a financial transaction; (2) the transaction involved the proceeds of unlawful activity; (3) the defendant knew that the proceeds were from unlawful activity; and (4) the defendant knew that the transaction was designed in whole or in part—(i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity.

*United States v. Singh*, 995 F.3d 1069 (9th Cir. 2021) (quoting *United States v. Wilkes*, 662 F.3d 524, 545 (9th Cir. 2011)). The evidence in question goes to the third element: that *Defendant knew* the transactions from counts three through six involved proceeds from

unlawful activity. The government will separately establish that the transactions actually involved proceeds of some form of criminal activity through irrefutable witness testimony that the funds were stolen before being sent to the Defendant. Witnesses who participated in stealing the funds from the IRS and laundering and sending the funds to and receiving funds from the Defendant and his brother are expected to testify and to also connect those funds to the funds at issue in this case. The evidence of Defendant's actions concealing and disguising these funds over the years surrounding the investigative events he became aware of, his attendance at criminal legal proceedings, and the jury's conviction of his brother will show that the defendant was on notice that the proceeds were from some form of unlawful activity. Because this evidence weighs directly on the existence of an element of the crime, it is not only relevant but crucial.

The Defendant argues that there is insufficient evidence of notice in the first place. This is incorrect. Defendant creatively but misleadingly argues that the "main entities at issue" in this case are "Century Energy, Vernon Truck Wash, Petrolion, Speedy Fuel Distribution, [and] International Pita Bread," and since none of these were mentioned in the indictments, any evidence of those proceedings would not have put him on notice. Defendant conveniently omits the very entity that was prominently mentioned in his brother's indictment, the pre-trial proceedings, the opening statement and trial: Speedy Lion Renewable Fuel Investments, LLC. Speedy Lion is the true "main entity" at issue in this case, and it was one of the main entities at issue in his brother's trial.

His omission of Speedy Lion is glaring and obvious because Speedy Lion is not only the account Termendjian specifically opened for the purpose of receiving the fraud proceeds, but where he continued to receive fraud proceeds for over three years, as well as the account in which he kept those fraud proceeds hidden from the government for years by keeping the funds in a non-interest bearing bank account. It is also the entity about which significant evidence was introduced at the trial of his brother Dermen. The Speedy Lion entity was specifically named or described in the Second Superseding Indictment no less than six times. It is also this entity's bank account from which Termendjian further hid the fraud proceeds by withdrawing over $41 million from the account in the form of cashier's checks which he did not negotiate, and which he held outside the banking system for months and months. When he did re-deposit these proceeds, he put the proceeds back in this entity's account, and then he transferred the proceeds half-way around the world for the sole purpose of getting the money back to his brother Dermen in Los Angeles. Defendant admitted in his petition (which he filed in the Utah case), which he signed under penalty of perjury, that he was returning his brother's funds to him (by transferring those funds back to Turkey so that they could be sent to his brother in Los Angeles).

The Defendant's claim that his name came up only in passing at the trial also simply defies the record. The record reveals that Grigor Termendjian was specifically mentioned in the Government's opening statement at his brother's trial. Further, the record reveals that the true "main entity at issue here," Defendant's company, Speedy Lion Renewable Fuel Investments, LLC, was not only

specifically mentioned and described in the government's opening statement, but mentioned no less than six separate times in that opening statement.

At the time Defendant sat and listened to that opening statement, he was controlling a Century Energy bank account with millions of dollars in it that he knew came from that Speedy Lion Renewable Fuel Investments LLC bank account. He knew he had received over $38 million of the fraud proceeds into that account, that he had controlled those millions of proceeds for years, and that he had concealed and disguised those funds in numerous ways for years before depositing what remained of them in the Century Energy bank account. Almost immediately after the trial, he cleared out those millions by sending them to his other businesses in odd amounts with no paperwork or documentation to support the transfers. This is essential evidence of the Defendant's knowledge that is crucial for the jury to hear.

**B. The evidence is not inadmissible hearsay.**

The evidence at issue is not inadmissible hearsay. The Government expects to call witnesses to testify firsthand about events and proceedings at which they were present or about which they have personal knowledge. They will also establish the dates and the purpose of the events and proceedings. They are also expected to testify that the Defendant attended many of the proceedings.

The Government's witnesses also are expected to testify about what they recall they admitted to or testified to at those proceedings. Any testimony about statements made during court proceedings will not be offered for their truth, but rather for their effect on the listener. Statements offered for their effect on the listener are not hearsay. *See, e.g., United States v. Millican*, No.

22-10336, 2024 WL 4441427, at *1 (9th Cir. Oct. 8, 2024), cert. denied, 145 S. Ct. 1153, 220 L. Ed. 2d 442 (2025); *United States v. Payne*, 944 F.2d 1458, 1472 (9th Cir. 1991). The relevant effect is the notice these proceedings provided to Defendant about the criminal nature of the transactions.

To the extent that any court dockets are used to prove that events took place in the Dermen case, these documents will be admissible for their truth as public records under Federal Rule of Evidence 803(8). *United States v. Loera*, 923 F.2d 725, 730 (9th Cir. 1991).

The Confrontation Clause is inapplicable here. *Crawford* itself states that "[t]he Clause also does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Crawford v. Washington*, 541 U.S. 36, 59, n.9 (2004); *Wilson v. Lynch*, No. 24-2525, 2025 WL 2953245, at *2 (9th Cir. Oct. 20, 2025) ("[T]he Clause applies only to hearsay and statements offered for their effect on the listener are not hearsay.") The Confrontation Clause also does not apply to public records. The Ninth Circuit has said, "it is undisputed that public records, such as judgments, are not themselves testimonial in nature and that these records do not fall within the prohibition established by the Supreme Court in Crawford." *United States v. Weiland*, 420 F.3d 1062, 1077 (9th Cir. 2005).

**C. The evidence is supported by a foundation of witness testimony and admissible documents.**

The evidence at issue is supported by a proper foundation of witness testimony and documentary evidence. Witnesses involved in the confrontation of Dermen by a federal agent will establish the dates

of that federal agent's confrontation of Dermen. Defendant's joint action with Dermen shortly after this event will establish the facts necessary for the jury to infer that Termendjian became aware of the confrontation. A witness is also expected to testify that shortly after the event, Dermen bragged about compromising another federal agent at that meeting by buying her drinks and having her picture taken with him with those drinks. Another witness is expected to testify that Termendjian informed him about the federal execution of a search warrant in Utah on the Kingstons and Washakie. Still another witness will testify that Defendant was informed and aware of the search warrant executed against Lev Dermen in Los Angeles in 2017.

In addition, Government witnesses are expected to testify that they personally observed Defendant in attendance at Dermen's arraignments in Los Angeles in August 2018, and in Utah in January 2019. They will also testify that they observed Defendant at other pre-trial proceedings, including numerous detention hearings in which the government introduced evidence of the fraud, and the money laundering to Turkey and back. Finally, witnesses who were also present are expected to testify that Defendant attended the 2020 trial on a daily basis, and Defendant's current counsel has made similar representations about his attendance at that trial to the government.

This non-controversial testimony falls squarely within Federal Rule of Evidence 701, evidence based on a witness's rationally based perception. This testimony will be corroborated by certified court records admitted under Federal Rules of Evidence 902(4) and 803(8), as well as airline travel records corroborating the fact that

Defendant travelled to Salt Lake City on the dates in question. Thus, the evidence will be supported by sufficient foundation.

**D. The evidence is not substantially more prejudicial than probative under Federal Rule of Evidence 403.**

The evidence is permissible under Federal Rule of Evidence 403 because it is not substantially more prejudicial than it is probative. It is of course prejudicial, but not unfairly so, and it is extremely relevant to the question of knowledge. The evidence is probative in that it establishes facts Defendant was aware of during the course of the conspiracy. This bears directly on his knowledge of the unlawful object of the conspiracy.

In addition, the fact that Defendant conducted the transactions detailed in counts three through six of the Superseding Indictment just days after a jury convicted his brother Dermen of stealing the money and laundering it is highly probative to Defendant's knowledge that the transactions he conducted which he knew involved the funds from Speedy Lion Renewable Fuel Investments, LLC, involved the proceeds of unlawful activity. This evidence is prejudicial *because* it is probative, but the probative value is not outweighed by *unfair* prejudice.

The evidence is also limited in scope. The government has no desire to admit "every filing, hearing, witness, exhibit, and ruling in the Dermen case[.]" Nor does the government seek to "litigate all of the proceedings" of the Dermen case. The government intends to admit evidence and testimony that shows Defendant Termendjian observed or became aware of events during the Dermen matter relevant to providing him notice that criminal activity was afoot (agent

contact, search warrant, arrest, arraignment, detention hearing,[2] trial, and verdict). The narrow range of the evidence offered will also serve to curtail its prejudicial effect.

Furthermore, the court can take measures short of blanket exclusion to lessen the prejudicial effect. The court can provide a limiting instruction to the jury not to take the facts that his brother was charged, tried and convicted of stealing the money and laundering it as proof that defendant is also guilty; but rather, it is only being offered to show that, and it is up to the jury to decide whether, the defendant knew the funds he received and handled for his brother were from some form or criminal activity. Any evidence of any out of court statements made at these proceedings about the funds would not be for their truth but rather offered for its effect on Defendant. Juries are presumed to listen to limiting instructions. *CSX Transp., Inc. v. Hensley*, 556 U.S. 838, 841 (2009); *United States v. Ovsepian*, 113 F.4th 1193, 1201 (9th Cir. 2024). These measures would suffice to ensure that Defendant is not unfairly prejudiced while still permitting probative evidence to be admitted.

**III. CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court deny Defendant's motion.

[2] With regard to the detention hearing, the government does not intend to introduce evidence of the outcome, but merely its occurrence and Defendant's presence there, especially if the hearing involved evidence of the funds to and through his Speedy Lion account.

Certificate of Compliance

The undersigned, counsel of record for the government, certifies that this brief contains 3588 number of words, which:

X complies with the word limit of L.R. 11-6.1.

complies with the word limit set by the court.

Dated: November 12, 2026

*/s/ Megan L. Jones*
RICHARD M. ROLWING
Senior Litigation Counsel
MEGAN L. JONES
Trial Attorney

Certificate of Service

I certify that on the 12th of November, 2026, I caused a copy of the foregoing to be filed through the CM/ECF electronic filing system, thereby providing notice to all parties of record in this case.

*/s/ Megan L. Jones*
Megan L. Jones
Trial Attorney